**THE HODA LAW FIRM, PLLC**
Marshal Hoda
TX Bar No. 24110009 (*pro hac vice* forthcoming)
3120 Southwest Fwy
Ste 101 PMB 51811
Houston, TX 77098
Telephone: (832) 848-0036
marshal@thehodalawfirm.com

**FITZGERALD MONROE FLYNN PC**
Jack Fitzgerald
CA Bar No. 257370
2341 Jefferson Street, Suite 200
San Diego, California 92110
Telephone: (619) 215-1741
jfitzgerald@fmfpc.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| J.J., by and through their guardian VALERIE GALLARDO, and S.G., by and through their guardian SIRREON GOODSON, individually and on behalf of all others similarly situated,<br><br>      *Plaintiffs*,<br><br>  v.<br><br>EPIC GAMES, INC.,<br><br>      *Defendant*. | Case No. 3:25-cv-2254<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  Introduction

1.  This action seeks to remedy deceptive practices employed on a massive scale in one of the world's most popular video games. The Defendant, Epic Games, Inc. ("Epic"), is the company behind the blockbuster game Fortnite. Fortnite is one of the most successful video games ever, with over 400 million registered users and generating more than $5 billion in annual revenue. The problem is that Epic has boosted those revenues through deceptive sales tactics directed at minors.

2.  Fortnite is a battle-survival game in which players fight against each other, each aiming to be the "last one standing." While the game is free to download and play, Epic charges players for certain in-game items, such as costumes and weapons. Here is an example of one such listing from Fortnite's "Item Shop":



3.      This image illustrates the deceptive practices at issue in this suit. The "Horizon Zero Dawn Bundle" is advertised with a prominent pink graphic designating a purported discount. Just to the right, Fortnite displays a stopwatch icon and a timer ("15 Hours" in the image above) partway through its countdown from 24 hours to zero. This display communicated that the availability of this item and the purported discounts were limited in time—such that the item would disappear or return to full price when the timer reached zero. And this is precisely how tens of millions of minor-age Fortnite players understood this item listing and myriad other listings just like it.

4.      But, when their countdown timers expired, Fortnite's Item Shop products did not disappear or return to full price. They remained available for purchase, often at the same purportedly discounted rate, for many days or even weeks at a time. This was an unlawful scheme. Fake sales with made-up expiration times are deceptive and illegal under state statutes proscribing unfair and deceptive trade practices, which prohibit misleading advertisements concerning the reasons for or existence of price reductions and representing that items have characteristics or qualities they do not have. Numerous courts have found that fake countdown timers like Epic's run afoul of these and similar prohibitions.

5.      The Plaintiffs here—J.J. and S.G.—are two minor Fortnite players who Epic deceived with its misleading countdown timers. Each is represented in this lawsuit by their legal guardian. As described below, each bought items from the Fortnite Item Store that Epic advertised with misleading countdown timers that were the same or substantially similar to those described above. They now bring this action, on behalf of themselves and others similarly situated, to remedy Epic's deceptive practices.

**II.    Parties**

6.      Plaintiff S.G. resides in Sacramento, California with their parents, including their guardian, Sirreon Goodson. As defined below, S.G. was both a Fortnite player and a minor under the age of 13 at all relevant times.

7.    Plaintiff J.J. resides in Texas with their parents, including their guardian, Valerie Gallardo. As defined below, J.J. was both a Fortnite player and a minor under the age of 13 at all relevant times.

8.    Defendant Epic Games, Inc. is a video game company incorporated in Maryland and headquartered in North Carolina. Epic maintains offices in San Francisco, California, and Larkspur, California.

### III.    Jurisdiction & Venue

9.    The aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the proposed class members is a citizen of a different state than Epic. Accordingly, this Court has original jurisdiction under the Class Action Fairness Act of 2005.[1]

10.    This Court has personal jurisdiction over Epic because it sold many products to minor-age Fortnite players in California using the deceptive practices described herein, including plaintiff S.G., and because it perpetrated the deceptive scheme at issue in this suit from its California offices. Employees at Epic's San Francisco and Larkspur offices were and have been responsible for, among other things, revenue growth through player behavioral analysis and product optimization and design. On information and belief, these efforts included the development and implementation of the design and advertising features of the Item Shop at issue here.

11.    Venue is proper because Epic resides in this district and a substantial part of the events or omissions giving rise to this action occurred herein.[2]

### IV.    Facts

#### A.    Background

12.    Epic is the developer of the video game Fortnite, which can be played on various devices, including smartphones, personal computers, and gaming consoles.

---

[1] 28 U.S.C. §§ 1332(d)(2), (6).

[2] 28 U.S.C. § 1391(b)(1), (2).

Fortnite launched in 2017. Today, it has more than 400 million registered users. Tens of millions of those users are minors residing in the United States.

13. Fortnite is a 'last man standing' game in which players control a character in a virtual world. These characters do battle with the goal of eliminating each other from the game. The game is made up of various levels through which players can progress. Fortnite's Battle Royale, for instance, is released in "Chapters," with each Chapter divided into eight to ten "Seasons." A new season is released every two to three months and brings a slew of new outfits, vehicles, weapons, and other features.

14. Fortnite allows its players to customize their avatars by purchasing various cosmetic items. These items include outfits (known as "skins"), backpacks, pickaxes, pets, cars, musical instruments, and more. Players use these items to personalize and distinguish their character from others. These cosmetic items are essential to Fortnite players. Customizing Fortnite player avatars and 'showing off' one's cosmetic items is central to Fortnite culture.

15. Fortnite players value cosmetic items inversely proportional to their perceived rarity or distinctiveness. The rarer an item is perceived to be, the greater its value. This phenomenon is demonstrated by the secondary market for Fortnite skins and other cosmetic items, where the rarest skins routinely sell for thousands of dollars.

B. *The Fortnite Item Shop*

16. Epic offers items for sale in the Fortnite Item Shop (the "Shop"), the game's digital store. Examples of item listings advertised to Fortnite players during the relevant period are as follows.







17.     The items offered in the Shop change over time. During the relevant period, there was no fixed rotation or schedule for offering items in the Shop. Some items, such as the ultra-rare Renegade Raider outfit, were offered briefly and have not been offered in more than six years. Others disappear only to reappear weeks later. These offerings and their schedules are subjects of intense interest to Fortnite players. So much so that millions of Fortnite players regularly tune in to streamers and YouTubers who track the appearance, disappearance, and value of Item Shop offerings.

### C.     *Epic's Deceptive Countdown Timers*

18.     As illustrated by the sample listings above, numerous items offered for sale in the Item Shop featured 24-hour countdown timers and, often, purported discounts. Fortnite displayed these countdown timers in various ways. Some featured a stopwatch beside a "__ Hours" designation; others appeared as a countdown timer beside a "Shop Refresh" notice. These timers began at 24 hours and counted down in real-time until the 24-hour period expired.

19.     Epic intended its users to understand these displays as indicating that players' ability to purchase the items and any purported discounts were limited in time, such that the items on offer would disappear from the Shop or the purported discounts would expire when the timer reached zero. And this is precisely how millions of tens of millions of Fortnite's minor players reasonably understood them. But, when the timers expired, numerous products in the Shop did not return to disappear or return to 'full' price. Instead, these items remained available for purchase and were offered at the same purportedly discounted rate—often for many days or weeks at a time.

20.     Epic did not explain to Fortnite players which items or discounts would disappear after the timer expired, how often or when an item had been offered previously, whether an item would be offered again, or what method Fortnite used to determine an item's availability.

21.     In 2023, Epic was sanctioned and fined for precisely the practices described above by the consumer protection authority of the Netherlands. As part of its

investigation, the Dutch authority surveyed 60 item sets offered for sale in the Fortnite Item Shop, each displayed with a 24-hour countdown timer. This study found that half of the item sets studied were offered longer than 24 hours. For a subset of fourteen of the item sets, the Dutch authority recorded precisely how many days the sets were on offer. This was always longer than 24 hours and on average *15 days*.

D.    *Effects on Minor-Age Fortnite Players*

22.    Fortnite is and has been enormously popular amongst minors. Indeed, Epic designed the game to be attractive to and (in some ways) suitable for this audience. The game is colorful, with a non-realistic style that is attractive to younger players. It designates players who are put out of action as "eliminated" (as opposed to industry-standard but more-adult terminology like "killed"), and it does not show graphic indications of violence (in contrast with industry-standard but more-adult graphics showing blood or gore). Whimsical thematic elements, such as players' ability to do various dances and costume themselves in lighthearted regalia, only add to the game's appeal to younger players. It is unsurprising that Epic has issued licenses to manufacturers like Hasbro to develop, produce, and market Fortnite merchandise aimed specifically at children, such as school supplies, children's clothing, and toys. Fortnite's appeal to minors is confirmed by the fact that tens of millions of U.S.-resident minors play Fortnite—many obsessively.

23.    All of this shows that Fortnite is specifically aimed at minors or, at the very least, that Epic knows that tens of millions of U.S.-based minors do play this enormously popular game. These minors are particularly vulnerable to deceptive sales tactics—and Epic has taken advantage of that vulnerability. Studies consistently show that creating the impression of scarcity increases the likelihood that consumers will make an impulse purchase. Research further indicates that minors are particularly susceptible to scarcity-based marketing techniques due to the 'fear of missing out' ("FOMO") engendered by the desire to own items perceived as unique or exclusive. Several studies that focused specifically on minors' purchasing decisions *in the Fortnite*

*Item Shop* have borne out these well-known consumer tendencies in precisely the context at issue here. These studies found that the design of Fortnite's Item Shop triggered minors' "FOMO" by creating the illusion of scarcity, which caused minors to purchase items they would not have otherwise.

24.    For all these reasons, it is clear that Epic's countdown timers created an artificial impression of urgency and thereby imbued millions of minor Fortnite players with FOMO and an attendant sense of urgency. This caused them to make purchases they otherwise would not have made or pay more for items than they otherwise would have. On information and belief, Epic advertised at least thousands of products in this way, resulting in at least millions of dollars in additional sales.

### E.    The Plaintiffs' Purchases

25.    Plaintiff S.G., a minor, purchased numerous items from the Fortnite Item Shop from 2022 to 2024, including items deceptively marketed using Epic's countdown timers as described above.

26.    Plaintiff J.J., a minor, purchased numerous items from the Fortnite Item Shop from 2022 to 2024, including items deceptively marketed using Epic's countdown timers as described above.

## V.    Class Allegations

27.    Plaintiffs bring this action under Fed R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of themselves and the following proposed Class (the "Nationwide Class"):

> All persons who purchased item(s) advertised with a countdown timer in the Fortnite Item Shop within the applicable statute of limitations and were under the age of 18 and residing in the United States at the time the purchase(s) were made.

28.    Plaintiffs S.G. also seeks to represent the following "California Sub-Class":

> All persons who purchased item(s) advertised with a countdown timer in the Fortnite Item Shop within the applicable statute of limitations and were under the age of 18 and residing in the state of California at the time the purchase(s) were made.

29.    Plaintiffs J.J. also seeks to represent the following "Texas Sub-Class":

1
2
3

> All persons who purchased item(s) advertised with a countdown timer in the Fortnite Item Shop within the applicable statute of limitations and were under the age of 18 and residing in the state of California at the time the purchase(s) were made.

4
5

30.    The Nationwide Class and the state Sub-Classes will be referred to collectively as the "Class."

6
7
8
9
10

31.    Excluded from the proposed Class are Defendant and its affiliates, its employees, officers, directors, legal representatives, heirs successors, subsidiaries, and affiliates, and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons who make a timely election to be excluded from the proposed Class.

11
12
13
14

32.    Certification of the Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can and will prove these claims on a class-wide basis, using the same evidence they would use to prove those elements in individual action alleging the same claims.

15
16

33.    This action meets all applicable standards for class certification in that Plaintiffs can demonstrate the elements delineated below.

17
18
19
20
21
22
23
24
25
26

34.    ***Numerosity***. The members of the proposed Class are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable. Plaintiff believes there are at least hundreds of thousands of members of the proposed Class. Plaintiffs will ascertain the precise number from Epic's books and records. On information and belief, Epic maintains databases containing information about Fortnite users that include personal information concerning each user, including the users' age, purchase history, and contact information. This information will allow Plaintiffs to ascertain the identities of the members of the proposed Class and communicate with them about this action by methods to be approved by the Court.

27
28

35. ***Commonality & Predominance***. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These include, but are not limited to:

(a)    Whether Epic engaged in the conduct alleged in this Complaint;

(b)    Whether Epic designed, marketed, distributed, sold, or otherwise placed the video game Fortnite into the stream of commerce in the United States;

(c)    Whether Epic's Fortnite Item Shop displayed discounts subject to countdown timers for items that did not revert to 'full' price at the expiration of those timers;

(d)    Whether Epic's Fortnite Item Shop displayed items subject to countdown timers and then continued to offer those items for sale in the Item Shop after the expiration of those timers;

(e)    Whether Plaintiffs and the members of the Class were injured and harmed directly by Epic's policies and enticement to entrap minors into making purchases in the Item Shop;

(f)    Whether Plaintiffs and the members of the Class are entitled to damages due to Epic's conduct as alleged in this Complaint, and if so, in what amounts.

36. ***Typicality***. Plaintiffs' claims are typical of the putative Class members' claims because all Class members were injured by Epic's wrongful conduct in the same or similar ways, as described herein. On information and belief, the deceptive marketing that gave rise to this action was displayed to all Fortnite players and thus all Class members in the same or substantially similar ways.

37. ***Adequacy***. Plaintiffs are adequate proposed class representatives because their interests do not conflict with the interests of the other members of the proposed Class they seek to represent. They have retained counsel competent and experienced in complex class-action litigation, and they intend to prosecute this action

vigorously. The interests of the proposed Class will be fairly and adequately protected by the Plaintiffs and their counsel.

38.    **_Superiority_**. The damages suffered by the Plaintiffs and the members of the proposed Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Epic, such that it would be impracticable for members of the proposed Class to litigate their claims individually. No unusual difficulties are likely to be encountered in the management of this action. The class-action mechanism is therefore superior to any other available means for the fair and efficient adjudication of this controversy.

## VI.    Tolling & Discovery Rule

39.    All applicable statutes of limitations have been tolled by the delayed-discovery doctrine. Reasonable consumers of ordinary technical skill do not repeatedly check product listings over periods of months or years and track the veracity of purported discounts. Nor do they have the technical abilities required to gather and analyze archival materials or videogame source code. For these reasons, the Plaintiffs and the members of the proposed Class could not reasonably be expected to have discovered the deceptive practices described herein before the initiation of this litigation.

## VII.   Causes of Action

40.    The Plaintiffs bring the following causes of action against Epic.

**COUNT I**
**NORTH CAROLINA UNFAIR & DECEPTIVE TRADE PRACTICES ACT**
**NORTH CAROLINA GENERAL STATUTE § 75-1.1 _ET SEQ._**

41.    Plaintiffs bring this claim individually and on behalf of the proposed Nationwide Class as its class representatives.

42.    Plaintiffs incorporate and reallege all factual allegations set out in this Complaint as the basis for this cause of action. These allegations include but are not limited to Plaintiffs' allegations concerning (i) the Fortnite video game at paragraphs

13 through 17, (ii) Epic's use of deceptive countdown timers at paragraphs 18 through 21, (iii) the effect of Epic's deceptive countdown timers on minors at paragraphs 22 through 25, and (iv) Plaintiffs' purchases from Epic at paragraphs 26 through 28.

43.    Unfair or deceptive acts or practices in or affecting commerce are unlawful under the North Carolina Unfair and Deceptive Trade Practices Act.

44.    Epic's practices constituted unfair and deceptive trade practices in violation of the Act for the reasons described above. These practices were unfair because they (i) offended established public policy and were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, (ii) were an inequitable assertion of Epic's power and position, and (iii) had the capacity or tendency to deceive, among other reasons to be proven with competent evidence.

45.    Epic's conduct was in or affecting commerce. As described above, Epic made its products available for purchase in the Fortnite Item Shop and did in fact sell at least millions of dollars of those products to consumers in the relevant period.

46.    As a result of Epic's conduct, Plaintiffs and the members of the proposed Class suffered damages including, but not limited to, those arising from purchasing items at a higher price than they would have otherwise, purchasing items that they would not otherwise have purchased, and purchasing items that were not in fact scarce and thus less valuable than advertised.

## COUNT II
## CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### CAL. CIV. CODE § 1750, *ET SEQ.*

47.    Plaintiff S.G. brings this claim on their own behalf and on behalf of the California Sub-Class.

48.    Plaintiff incorporates and realleges all factual allegations set out in this Complaint as the basis for this cause of action. These allegations include, but are not limited to, Plaintiffs' allegations concerning (i) the Fortnite video game in paragraphs 13 through 17, (ii) Epic's use of deceptive countdown timers in paragraphs 18 through

21, (iii) the effect of Epic's deceptive countdown timers on minors at paragraphs 22 through 25, and (iv) Plaintiffs' purchases from Epic at paragraphs 26 through 28.

49.     Plaintiff and the members of the proposed Sub-Class were and are consumers within the meaning of Cal. Civ. Code § 1761(d).

50.     Plaintiff and the members of the proposed Sub-Class engaged in "transactions" with Epic as defined by California Code of Civil Procedure § 1761(e).

51.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Epic in transactions intended to result in, and which did result in the sale of goods to consumers.

52.     Epic violated Section 1770(a)(13) of the California Civil Code by making false and misleading statements of fact concerning the reasons for and existence of price reductions in the Fortnite Item Shop. As alleged fully above, Epic disseminated untrue and misleading statements of fact to Plaintiff and members of the proposed Sub-Class. Epic advertised products in the Fortnite Item Shop with countdown timers that were intended to and in fact did communicate to Fortnite players that Epic's products and discounts applicable to those products would be available for a limited time. But numerous products remained available, often with the same purported discounts, after those countdown timers expired.

53.     Epic violated Section 1770(a)(5) of the California Civil Code by representing that products offered for sale in the Fortnite Item Shop had characteristics or benefits that they did not have. In particular, Epic falsely represented that the products were scarce and thus more likely to be distinctive—features that are crucial to minor-age Fortnite players—and that the value of these items was higher than their actual value.

54.     Epic violated Section 1770(a)(9) of the California Civil Code by advertising its products as being offered at a limited-time discount, when in fact Epic did not intend

to offer the products at a limited-time discount, but instead to offer said discounts on an ongoing basis.

55.    Epic's misrepresentations were intended to deceive, and in fact did deceive, Plaintiff and the members of the proposed Sub-Class. Epic knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

56.    Epic's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Epic's products. Epic's misrepresentations were a substantial factor in Plaintiff's purchase decisions and those made by the members of the proposed Sub-Class. Class-wide reliance can be inferred because Epic's misrepresentations were material and uniform across the relevant product listings.

57.    As a direct and proximate result of Epic's conduct, Plaintiffs and the members of the proposed Class suffered damages including, but not limited to, those arising from purchasing items at a higher price than they would have otherwise, purchasing items that they would not otherwise have purchased, and purchasing items that were not in fact scarce and thus less valuable than advertised. Plaintiffs provided notice of their claims to Epic more than 30 days before commencing this lawsuit, but Epic has failed to take the remedial measures Plaintiffs requested.

## COUNT III
### CALIFORNIA FALSE ADVERTISING LAW
### CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500, *ET SEQ.*

58.    Plaintiff S.G. brings this claim on their own behalf and on behalf of the California Sub-Class.

59.    Plaintiff incorporates and realleges all factual allegations set out in this Complaint as the basis for this cause of action. These allegations include, but are not limited to, Plaintiffs' allegations concerning (i) the Fortnite video game in paragraphs 13 through 17, (ii) Epic's use of deceptive countdown timers in paragraphs 18 through

21, (iii) the effect of Epic's deceptive countdown timers on minors at paragraphs 22 through 25, and (iv) Plaintiffs' purchases from Epic at paragraphs 26 through 28.

60.     Epic violated Section 17500 of the California Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and members of the proposed Sub-Class. Epic advertised products in the Fortnite Item Shop with countdown timers that were intended to and in fact did communicate to Fortnite players that Epic's products and discounts applicable to those products would be available for a limited time. But numerous products remained available, often with the same purported discounts, after those countdown timers expired.

61.     Epic's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on Epic's statements when purchasing Epic's products. Epic's misrepresentations were a substantial factor in Plaintiff's purchase decision. Substantial class-wide reliance can be inferred because Epic's misrepresentations were material and uniform across the relevant product listings.

62.     As a direct and proximate result of Epic's conduct, Plaintiffs and the members of the proposed Class suffered damages including, but not limited to, those arising from purchasing items at a higher price than they would have otherwise, purchasing items that they would not otherwise have purchased, and purchasing items that were not in fact scarce and thus less valuable than advertised.

### COUNT IV
### CALIFORNIA UNFAIR COMPETITION LAW
### CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *ET SEQ.*

63.     Plaintiff S.G. brings this claim on their own behalf and on behalf of the California Sub-Class.

64.     Plaintiff incorporates and realleges all factual allegations set out in this Complaint as the basis for this cause of action. These allegations include, but are not limited to, Plaintiffs' allegations concerning (i) the Fortnite video game in paragraphs 13 through 17, (ii) Epic's use of deceptive countdown timers in paragraphs 18 through

21, (iii) the effect of Epic's deceptive countdown timers on minors at paragraphs 22 through 25, and (iv) Plaintiffs' purchases from Epic at paragraphs 26 through 28.

65.     Epic has violated California's Unfair Competition Law by engaging in unlawful, fraudulent, and unfair conduct.

66.     Epic engaged in unlawful conduct by violating the North Carolina Unfair and Deceptive Trade Practices Act, the California False Advertising Law, and the California Consumer Legal Remedies Act, as alleged above and incorporated here.

67.     Epic engaged in deceptive conduct by disseminating untrue and misleading advertisements to Plaintiff and members of the proposed Sub-Class. Epic advertised products in the Fortnite Item Shop with countdown timers that were intended to and in fact did communicate to Fortnite players that Epic's products and discounts applicable to those products would be available for a limited time. But numerous products remained available, often with the same purported discounts, after those countdown timers expired.

68.     Epic's misrepresentations were intended to mislead its customers and did in fact mislead Plaintiff and other reasonable, similarly situated consumers. Plaintiff and the members of the proposed Sub-Class reasonably relied on Epic's misrepresentations and omissions as detailed above.

69.     Epic committed unfair acts by falsely advertising that its products and associated discounts would be available for a limited time, represented by the countdown timers displayed to Fortnite players, when in fact those products and associated discounts continued to be offered after the countdown timers expired. This conduct was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

70.     Epic violated established public policy by violating the CLRA, as alleged above and incorporated here. The unfairness of Epic's practices is thus tethered to a legislatively declared policy.

71.     The harm to Plaintiff and the members of the proposed Sub-Class outweighs the public utility of Epic's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading advertising only injures healthy competition and harms consumers.

72.     Plaintiff and the members of the proposed Sub-Class could not have reasonably avoided this injury. Epic's misrepresentations were deceptive to reasonable consumers like Plaintiff and the members of the proposed Sub-Class. Class-wide reliance on Epic's misrepresentations can be inferred because Epic's misrepresentations were material and uniform across the relevant product listings.

73.     As a direct and proximate result of Epic's conduct, Plaintiffs and the members of the proposed Class suffered damages including, but not limited to, those arising from purchasing items at a higher price than they would have otherwise, purchasing items that they would not otherwise have purchased, and purchasing items that were not in fact scarce and thus less valuable than advertised.

## COUNT V
## TEXAS UNFAIR & DECEPTIVE TRADE PRACTICES ACT
## TEXAS BUSINESS & COMMERCE CODE § 17.41, *ET SEQ.*

74.     Plaintiff J.J. brings this claim on their own behalf and on behalf of the Texas Sub-Class.

75.     Plaintiff incorporates and realleges all factual allegations set out in this Complaint as the basis for this cause of action. These allegations include, but are not limited to, Plaintiffs' allegations concerning (i) the Fortnite video game in paragraphs 13 through 17, (ii) Epic's use of deceptive countdown timers in paragraphs 18 through 21, (iii) the effect of Epic's deceptive countdown timers on minors at paragraphs 22 through 25, and (iv) Plaintiffs' purchases from Epic at paragraphs 26 through 28.

76.     Plaintiff and the members of the proposed Sub-Class were and are "consumers" under Texas Business and Commerce Code Section 17.45.

77.     Epic violated Section 17.46(b)(5) of the Texas Business and Commerce Code by representing that products offered for sale in the Fortnite Item Shop had characteristics or benefits that they did not have. In particular, Epic falsely represented that the products were scarce and thus more likely to be distinctive—features that are crucial to minor-age Fortnite players—and that the value of these items was higher than their actual value, by utilizing fake limited-time discounts.

78.     Epic violated Section 17.46(b)(9) of the Texas Business and Commerce Code by advertising its products as being offered at a limited-time discount, when in fact Epic did not intend to offer the products at a limited-time discount, but instead to offer said discounts on an ongoing basis.

79.     Epic violated Section 17.46(b)(11) of the Texas Business and Commerce Code by advertising its products with false and misleading statements of fact concerning the reasons for and existence of price reductions. It did so by advertising its products as being offered at limited-time discounts, when in fact Epic did not intend to offer the products at limited-time discounts, but instead to offer said products at purported discounts on an ongoing basis.

80.     Epic's misrepresentations were intended to mislead its customers and did in fact mislead Plaintiff and other reasonable, similarly situated consumers. Plaintiff and the members of the proposed Sub-Class reasonably relied on Epic's misrepresentations and omissions as detailed above.

81.     Epic's conduct was a producing cause of Plaintiff's damages and those suffered by the members of the proposed Sub-Class. As a direct and proximate result of Epic's conduct, Plaintiffs and the members of the proposed Sub-Class suffered damages including, but not limited to, those arising from purchasing items at a higher price than they would have otherwise, purchasing items that they would not otherwise have purchased, and purchasing items that were not in fact scarce and thus less valuable than advertised.

## VIII.  Jury Demand

82.    Plaintiffs demand a jury trial on all issues so triable.

March 5, 2025

Marshal Hoda
**THE HODA LAW FIRM, PLLC**
3120 Southwest Fwy
Ste 101 PMB 51811
Houston, TX 77098
Telephone: (832) 848-0036
marshal@thehodalawfirm.com

**FITZGERALD MONROE FLYNN PC**
Jack Fitzgerald
2341 Jefferson Street, Suite 200
San Diego, California 92110
Telephone: (619) 215-1741
jfitzgerald@fmfpc.com

***Attorneys for Plaintiffs***

## CLRA VENUE DECLARATION

I, Marshal Hoda, declare as follows:

1.      I am counsel for Plaintiffs. I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.      The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action are believed to have occurred in this district.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on March 5, 2025, in New Orleans, Louisiana.

_____
Marshal Hoda
Attorney & Founder
The Hoda Law Firm, PLLC