1   FAEGRE DRINKER BIDDLE REATH LLP
    Paul A. Rosenthal (SBN 338994)
2   paul.rosenthal@faegredrinker.com
    600 Campus Drive
3   Florham Park, New Jersey 60606
    Telephone:    (973) 564-7030
4   Facsimile:    (973) 360-9831

5   FAEGRE DRINKER BIDDLE & REATH LLP
    Alyssa S. Wolf (SBN 337162)
6   alyssa.wolf@faegredrinker.com
    Four Embarcadero Center, 27th Floor
7   San Francisco, California 94111
    Telephone:    +1 415 591 7500
8   Facsimile:    +1 415 591 7510

9   Attorneys for Defendant
    EPIC GAMES, INC.
10

11              UNITED STATES DISTRICT COURT

12           NORTHERN DISTRICT OF CALIFORNIA

13

14  S.G., by and through their guardian SIRREON       Case No. 3:25-cv-2254
    GOODSON, individually and on behalf of all
15  others similarly situated,                        Hon. Rita F. Lin

16                  Plaintiff,                         **DEFENDANT EPIC GAMES, INC.'S
                                                       NOTICE OF MOTION AND MOTION
17          v.                                         TO COMPEL ARBITRATION OR, IN
                                                       THE ALTERNATIVE, TO TRANSFER
18  EPIC GAMES, INC.,                                  TO THE EASTERN DISTRICT OF
                                                       NORTH CAROLINA**
19                  Defendant.
                                                       Complaint Filed:   March 5, 2025
20
                                                       Hearing Date: July 1, 2025
21                                                     Time: 10:00 AM
                                                       Courtroom: 15
22
                                                       *[Declarations of Joshua D. Shaw and Paul
23                                                     A. Rosenthal filed concurrently herewith]*

24

25

26

27

28

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER
Case No. 3:25-CV-2254

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 1, 2025 at 10:00 a.m., or as soon thereafter as this matter may be heard by the Honorable Rita F. Lin, in Courtroom 15 of the above-entitled court located at 450 Golden Gate Ave., 18th Floor, San Francisco, CA, Defendant Epic Games, Inc. ("Epic Games"), by and through its counsel of record, will and hereby does move this Court for an order to compel Plaintiff S.G., by and through his guardian Sirreon Goodson, to arbitrate their disputes with Epic Games, as they contractually agreed to do when they established an account to play a video game made available by Epic Games, and to stay this case while the arbitration proceeds. An End User License Agreement ("EULA") between Plaintiff and Epic Games requires arbitration of disputes and expressly delegates all disputes over the scope and enforceability of the arbitration requirement to the arbitrator. Pursuant to that delegation, which controlling precedent requires this Court to honor, this Court should not address any disputes over whether Plaintiff's claims are arbitrable. If the Court disagrees, however, the same contract to which Plaintiff agreed requires any non-arbitrable disputes to be heard exclusively in the state or federal courts located in Wake County, North Carolina, where Epic Games' headquarters are located. Epic Games thus moves the Court, in the alternative, for an order transferring any non-arbitrable matters in this case to the United States District Court for the Eastern District of North Carolina, pursuant to the truncated analysis required when forum selection is set by contract consistent with *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49 (2013).

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support, the Declarations of Joshua D. Shaw and Paul A. Rosenthal and exhibits thereto filed concurrently herewith, as well as all papers and pleadings on file herein, and such argument as properly may be presented at the hearing.

1

2  Dated: May 27, 2025

Respectfully submitted

**FAEGRE DRINKER BIDDLE & REATH LLP**

3

4

By:     */s/ Paul A. Rosenthal*
Paul A. Rosenthal
Alyssa S. Wolf

5

6

Attorneys for Defendant
EPIC GAMES, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER
Case No. 3:25-CV-2254

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 2

    I.    *Fortnite* Users Must Accept the EULA to Play *Fortnite* or Purchase Items in the *Fortnite* Item Shop, and a User of S.G.'s Account Did So............................ 2

    II.    The EULA Requires the Arbitration of All Disputes................................................ 4

LEGAL STANDARDS.......................................................................................................... 5

    A.    Motion to Compel Arbitration ...................................................................... 5

    B.    Motion to Transfer Venue ............................................................................. 7

ARGUMENT .......................................................................................................................... 8

    I.    S.G. Agreed to Arbitrate His Claims Against Epic Games. ..................................... 8

    II.    The EULA Delegates All Threshold Questions of Arbitrability to the Arbitrator................................................................................................................... 9

    III.    Any Non-Arbitrable Claims Must be Transferred to North Carolina. ................... 13

CONCLUSION ..................................................................................................................... 14

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER

Case No. 3:25-CV-2254

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Angelilli v. Activision Blizzard, Inc.*,
    No. 23-CV-16566, 2025 WL 524276 (N.D. Ill. Feb. 18, 2025) ............................................ 10

*Antonetti v. Activision Blizzard, Inc.*,
    No. 1:24-CV-2019-TWT, 2025 WL 359323 (N.D. Ga. Jan. 31, 2025) ................................... 10

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2010) .......................................................................................................... 5

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) .......................................................................................................... 6

*Atlantic Marine Constr. Co. v. U.S. District Court*,
    571 U.S. 49 (2013) .................................................................................................... *passim*

*Ayers v. Epic Games, Inc.*,
    No. 1:24-cv-64-AW-MJF, Dkt. 162 (N.D. Fla. Jan. 27, 2025) ........................................... 10

*Berman v. Freedom Fin. Network*,
    30 F.4th 849 (9th Cir. 2022) ..................................................................................... 5, 6, 8, 9

*Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) .......................................................................................................... 7, 14

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) .......................................................................................... 6

*Buckeye Check Cashing, Inc. v. Cardegna*,
    126 S. Ct. 1204 (2006) ..................................................................................................... 13

*C.M.D. v. Facebook, Inc.*,
    621 F. App'x 488 (9th Cir. 2015) ..................................................................................... 11

*Caremark, LLC v. Chickasaw Nation*,
    43 F.4th 1021 (9th Cir. 2022) ........................................................................................ 1, 6

*Chabolla v. ClassPass Inc.*,
    129 F.4th 1147 (9th Cir. 2025) .......................................................................................... 9

*Collett v. Ancestry.com DNA LLC*,
    No. 19-CV-03743-RS, 2019 WL 13253477 (N.D. Cal. Dec. 19, 2019) ............................... 12

*Courtright v. Epic Games, Inc.*,
    No. 2:24-CV-04055-BCW, 2025 WL 558560 ................................................................. 9, 10

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Cronin v. Advanced Fresh Concepts Franchise Corp.*,
  No. 20 Civ. 816, 2020 WL 6391216 (C.D. Cal. 2020) ............................................ 12

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ............................................................................................... 6

*Dunn v. Activision Blizzard, Inc.*,
  No. 3:23-cv-00224-JM, Dkt. No. 163 ..................................................................... 10

*E.K.D. v. Facebook, Inc.*,
  885 F. Supp. 2d 894 (S.D. Ill. 2012) ...................................................................... 11

*In re Facebook Biometric Information Privacy Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ................................................................... 8

*Falls v. Soulbound Studios, LLC*,
  No. 21 Civ. 961, 2021 WL 4295137 (C.D. Cal. July 6, 2021) (applying
  *Atlantic Marine* to clickwrap contract) ................................................................... 7

*Fireman's Fund Ins. Co. v. M.V. DSR Atl.*,
  131 F.3d 1336 (9th Cir. 1997) ................................................................................ 7

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ............................................................................................... 5

*Ghazizadeh v. Coursera, Inc.*,
  737 F. Supp. 3d 911 (N.D. Cal. 2024) .................................................................... 6

*Hansen v. LMB Mortg. Servs., Inc.*,
  1 F.4th 667 (9th Cir. 2021) ..................................................................................... 7

*Heidbreder v. Epic Games, Inc.*,
  438 F. Supp. 3d 591 (E.D.N.C. 2020) .................................................................... 9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ............................................................................................. 12

*Int'l Brotherhood of Teamsters v. NASA Servs., Inc.*,
  957 F.3d 1038 (9th Cir. 2020) ................................................................................ 5

*Johnson v. Activision Blizzard, Inc.*,
  No. 3:24CV00026 JM, 2025 WL 679033 (E.D. Ark. Mar. 3, 2025) ..................... 9, 10

*Jung v. Thor Motor Coach, Inc.*,
  No. 22 Civ. 1763, 2023 WL 1475109 (C.D. Cal. Jan. 20, 2023) ........................... 14

*K.F.C. v. Snap, Inc.*,
  29 F.4th 835 (7th Cir. 2022) ................................................................................... 10

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER
Case No. 3:25-CV-2254

*Kamath v. Coinbase, Inc.*,
    No. 23 Civ. 3533, 2024 WL 950163 (N.D. Cal. Mar. 5, 2024) ................................. 8

*Lentini v. Kelly Servs., Inc.*,
    No. C17-3911 WHA, 2017 WL 4354910 (N.D. Cal. Oct. 2, 2017) ........................ 7

*Macias v. Excel Bldg. Servs., LLC*,
    767 F. Supp. 2d 1002 (N.D. Cal. 2011) ................................................................. 7

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)................................................................................ 6, 8

*Mohamed v. Uber Techs.*,
    848 F.3d 1201 (9th Cir. 2016)............................................................................ 12

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .................................................................................................. 5

*Murphy v. Schneider Nat'l, Inc.*,
    362 F.3d 1133 (9th Cir. 2004)............................................................................... 7

*N.A. v. Nintendo of America Inc.*,
    No. 23-cv-2424, 2023 WL 8587628 (N.D. Cal. Dec. 11, 2023)........................... 10

*Orellana v. Roblox Corp.*,
    No. 6:24-CV-762-JSS-RMN, 2025 WL 694428 (M.D. Fla. Mar. 4, 2025)..................... 9, 10

*Ponomarenko v. Shapiro*,
    287 F. Supp. 3d 816 (N.D. Cal. 2018) ................................................................. 14

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ................................................................................................ 6

*S.T.G. v. Epic Games, Inc.*,
    752 F. Supp. 3d 1200 (S.D. Cal. 2024) .................................................. 6, 9, 10, 13

*Sandler v. iStockphoto LP*,
    No. 15 Civ. 3659, 2016 WL 871626 (C.D. Cal. Feb. 5, 2016) ............................... 7

*Shearson/Am. Express, Inc. v. McMahon*,
    482 U.S. 220 (1987) .............................................................................................. 5

*Smith v. Spizzirri*,
    601 U.S. 472 (2024) .............................................................................................. 1

*In re: StockX Cust. Data Sec. Breach Litig.*,
    19 F.4th 873 (6th Cir. 2021)................................................................................ 10

*Suski v. Coinbase, Inc.*,
    55 F.4th 1227 (9th Cir. 2022)................................................................................ 6

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER

Case No. 3:25-CV-2254

*Y.H. v. Blizzard Entertainment, Inc.*,
    No. 30-2022-01257732-CU-BT-CXC, 2025 WL 1331952 ................................ 11, 12

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) .................................................................................... 7

**Statutes, Rules & Regulations**

9 U.S.C. § 4 ................................................................................................................ 5, 6

28 U.S.C. § 1404(a) .................................................................................................. 7, 14

FAA ....................................................................................................................... 5, 6, 12

Rule 56 ........................................................................................................................... 7

Faegre Drinker Biddle &
Reath LLP
Attorneys at Law
San Francisco

v

EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER
Case No. 3:25-CV-2254

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

In the Complaint in this matter, S.G., a minor suing by his parent ("Plaintiff" or "S.G."), alleges that Defendant Epic Games, Inc. ("Epic Games") employed deceptive advertising practices by placing "countdown timers" on certain items available for in-game purchase in the video game experience *Fortnite*. *See* Compl. ¶¶ 1-5. Everyone who creates an Epic Games account to play *Fortnite*, as a prerequisite to launching the game software and playing the game, must agree to the *Fortnite* End User License Agreement ("EULA"). The EULA includes a clearly stated requirement to arbitrate all "dispute[s], claim[s], or controvers[ies]" relating to the "use or attempted use of Epic's products or services." Declaration of Joshua D. Shaw ("Shaw Decl."), Ex. A § 12.3.1. A user of S.G.'s account agreed to the EULA multiple times, including in July 2024, just a few months before S.G. initiated this dispute. Shaw Decl. ¶ 28. Because S.G. is contractually bound to pursue his claims in arbitration, the Court should compel him to do so and stay this case while arbitration proceeds. *See Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) (requiring such stays).

The process by which Epic Games obtains assent to the EULA is valid and binding. Epic Games displays the EULA on-screen to *Fortnite* players and requires them to place an affirmative mark in a box confirming their consent. The Ninth Circuit has repeatedly confirmed this process is enforceable, and courts in the Ninth Circuit and elsewhere have compelled arbitration in cases involving the *Fortnite* EULA specifically. S.G.'s claims relate to his "use or attempted use of Epic's products or services"—his in-game purchases—and thus fall squarely within the scope of the EULA's arbitration requirement. Further, because the EULA expressly delegates to the arbitrator all disputes over "the validity, enforceability, or scope of this Binding Individual Arbitration section," any scope disputes would be for the arbitrator to decide. *See* Shaw Decl. ¶ 14 & Ex. A, § 12.3.1; *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) (enforcing contractual delegation of validity, enforceability, and scope disputes to arbitration).

S.G. attempted to opt out of the arbitration requirement, but did so belatedly and incompletely, making his attempt ineffective. The January 2025 communication Epic Games received pertaining to S.G.'s purported opt out both omitted required information and came too late to apply to this dispute,

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER
Case No. 3:25-CV-2254

which he already had commenced three months earlier. Specifically, S.G. sent Epic Games a "Notice of Dispute" pursuant to the EULA in October 2024. *See* Declaration of Paul A. Rosenthal ("Rosenthal Decl.") ¶ 3 & Ex. A. In December 2024, Epic Games updated the EULA to change the arbitration provider and to add provisions for addressing "mass arbitrations." *See* Shaw Decl. ¶¶ 23-24 & Ex. B § 12.3.4 (amended EULA). The amended EULA expressly did not apply to pending Disputes. Shaw Decl. Ex. B § 12.3.7. After a user of S.G.'s account accepted the amended EULA in December 2024, a law firm sent Epic Games a list of names of people the law firm said wished to exercise their time-limited right to opt out of the December 2024 version of the EULA. That list included S.G.'s name. *See* Rosenthal Decl. Ex. C. But that notice did not include an accurate username for S.G., which the EULA specified must be provided for an opt-out to be effective. Further, the opt-out request was prospective only. *See* Rosenthal Decl. ¶¶ 12, 14 & Ex. C; Shaw Decl. Ex. A § 12.6. S.G.'s Complaint is silent as to any basis for avoiding arbitration, but if S.G. were to assert this January 2025 opt-out notice as a defense to arbitration, Epic Games would dispute the opt-out's effectiveness. These, too—the notice's non-compliance with the EULA's requirements and its inapplicability to pending Disputes—are matters for the arbitrator to resolve pursuant to the EULA's delegation clause.

Separately, the EULA requires that any claims deemed non-arbitrable must be litigated exclusively in the federal or state courts located in Wake County, North Carolina. *See* Shaw Decl. Ex. A, § 11. That term is consistent across the multiple EULAs to which Plaintiff agreed and would not be impacted by his request to opt out of the December 2024 arbitration agreement, even if that request were effective (which it is not). Supreme Court precedent requires enforcement of such contractual forum-selection clauses. *See Atlantic Marine Constr. Co. v. U.S. District Court*, 571 U.S. 49 (2013). The Court should not reach questions of arbitrability because the arbitrator must resolve them, but if the Court were to determine any of S.G.'s claims not to be arbitrable, the Court should transfer the case to the Eastern District of North Carolina.

## FACTUAL BACKGROUND

### I.    *Fortnite* Users Must Accept the EULA to Play *Fortnite* or Purchase Items in the *Fortnite* Item Shop, and a User of S.G.'s Account Did So.

S.G. alleges he is a "*Fortnite* player" who purchased "numerous items within the *Fortnite*

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER
Case No. 3:25-CV-2254

Item Shop." Compl. ¶¶ 6-7, 25-26. Before anyone may launch the *Fortnite* software and play the game, however, that person must first agree to the EULA. Shaw Decl. ¶¶ 5-6, 18. This is true regardless of the device or platform used. *Id.* ¶ 5. The player may scroll through the text of the EULA, which is displayed on-screen, and must either accept the EULA by clicking an "accept" button or reject the EULA by clicking a "decline" button. *Id.* ¶¶ 6-9.

One who accepts the EULA "affirm[s] that you have reached the legal age of majority [and] understand and accept this Agreement (including its dispute resolution terms)." *Id.* ¶ 10 & Ex. A, Intro. The EULA states "[i]f you are under the legal age of majority, your parent or legal guardian must consent to this Agreement." *Id.* Upon acceptance, the account holder becomes "legally and financially responsible for all actions using or accessing our software, including the actions of anyone you allow to access your account." *Id.*



Further, when one enters a method of payment to make a purchase from the *Fortnite* Item Shop, Epic Games separately requires both acceptance of the EULA and confirmation that the person entering payment information is an adult and an authorized user of the method of payment. *Id.* ¶ 11. A portion of that screen is depicted on the next page.

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3
EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER
Case No. 3:25-CV-2254

Epic Games used the information S.G.'s counsel provided in their October 17, 2024, Notice of Dispute to locate S.G.'s player account. *Id.* ¶ 28. This account was created in March 2018 and a user of it accepted the EULA on several occasions. The most recent acceptance, prior to Epic Games' receipt of S.G.'s Notice of Dispute, was in July 2024. *Id.* ¶ 28. The EULA in effect on that date is the operative EULA for this dispute.

A user of S.G.'s account also accepted an amended *Fortnite* EULA in December 2024. In January 2025, Epic Games received a letter purporting to opt S.G. out of the arbitration requirement prospectively. *See* Rosenthal Decl. ¶¶ 12-15. That January letter was not sent by the counsel representing S.G. in this case, but by other counsel. *See id.* The letter did not include a correct "screen name" for S.G.'s account, which the EULA requires for an opt-out to be effective. *See* Shaw Decl. ¶ 32.

Importantly, S.G.'s *Fortnite* player account remains active to this day, with dozens of *Fortnite* games played since the Complaint was filed. The account has had active *Fortnite* gameplay as recently as May 7, 2025. *Id*. ¶¶ 33-37.

## II.    The EULA Requires the Arbitration of All Disputes.

The EULA's requirement to arbitrate disputes is called out prominently at the top of the EULA, in all-capital letters, when a player is prompted to "accept" or "decline" the EULA's terms. *Id.* ¶¶ 8-10. The arbitration agreement also expressly states that "whether a dispute is subject to arbitration under [the EULA] will be determined by the arbitrator rather than a court." *Id.* The EULA in effect when S.G. notified Epic Games of his Dispute gave S.G. a time-limited right to opt out of the arbitration requirement, which S.G. did not exercise. *Id.* ¶¶ 15, 29. That version of the

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER
Case No. 3:25-CV-2254

EULA designated JAMS as the arbitration administrator and specified that arbitrations will be conducted according to the JAMS Streamlined Rules and Procedures. *Id.* Ex. A § 12.3. Once a Dispute has been initiated, as this one was with counsel's transmission of the Notice of Dispute in October 2024, the EULA prohibits Epic Games from altering the terms for arbitrating the Dispute. *Id.* Ex. A § 12.3.6.

The EULA also has a North Carolina choice of law clause. *Id.* Ex. A § 11, and requires that "any Dispute[] deemed not subject to binding individual arbitration" be brought under "the exclusive jurisdiction of the Superior Court of Wake County, North Carolina, or, if federal jurisdiction exists, the United States District Court for the Eastern District of North Carolina." *Id.* It further states that the user "and Epic agree to waive any jurisdictional, venue, or inconvenient forum objections to such courts . . . ." *Id.*

## **LEGAL STANDARDS**

### A.    **Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA"), which applies to the EULA, Shaw Decl. Ex. A § 12.3, reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2010) (citation omitted). "The 'principal purpose' of the FAA is to ensure that private arbitration agreements are enforced according to their terms." *Id.* at 344. The FAA requires courts to "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). The Supreme Court has instructed that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself" or a "defense to arbitrability." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). A party aggrieved by a refusal to arbitrate under a written agreement may petition a court for an order compelling arbitration. *See* 9 U.S.C. § 4.

"When a website offers contractual terms to those who use the site, and a user engages in conduct that manifests [their] acceptance of those terms, an enforceable agreement can be formed." *Berman v. Freedom Fin. Network*, 30 F.4th 849, 856 (9th Cir. 2022).[1] Epic Games' method of

---

[1] Courts apply "ordinary state-law principles that govern the formation of contracts" when deciding these issues. *Int'l Brotherhood of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

obtaining assent is referred to as "clickwrap" because the user must click a box confirming assent to terms. "'[C]lickwrap' agreements are agreements in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 923 (N.D. Cal. 2024) (citing *Berman*, 30 F.4th at 856). Notably, "[c]ourts 'have routinely found clickwrap agreements enforceable,' because the consumer has received notice of the terms being offered and, 'knows or has reason to know that the other party may infer from his conduct that he assents' to those terms." *Id.* Epic Games' scrollable display containing the EULA is "uncluttered" and "spatially coupled with the ['Agree' button] mechanism for manifesting assent." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017). The "Agree" button thus constitutes "an unambiguous manifestation of assent." *Berman*, 30 F.4th at 857 (citation omitted).

Where a contract clearly delegates to the arbitrator disputes over the validity, enforceability, or scope of the arbitration requirement, as the EULA does, courts must leave "any challenge to the validity of the Agreement as a whole for the arbitrator," resolving only disputes as to the delegation provision itself. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010). The Supreme Court has held that the FAA "[b]y its terms . . . leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original); *see also* 9 U.S.C. § 4. Where an arbitration agreement contains a delegation clause, the only "gateway" issue for the Court is whether the parties formed the agreement to arbitrate. *See Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1229 (9th Cir. 2022); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "[A]ll arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance." *Caremark*, 43 F.4th at 1030; *see also S.T.G. v. Epic Games, Inc.*, 752 F. Supp. 3d 1200, 1211 (S.D. Cal. 2024) ("The Court concludes that [the *Fortnite*] EULA clearly and unmistakably delegates to the arbitrator questions of [its] 'validity, enforceability, or scope.'").

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER
Case No. 3:25-CV-2254

In determining whether parties agreed to arbitrate, Ninth Circuit courts rely on the summary judgment standard under Rule 56 because an order to compel arbitration "is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). In deciding motions to compel arbitration, courts may "consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." *Macias v. Excel Bldg. Servs., LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (internal quotation and citation omitted).

### B.    Motion to Transfer Venue

Where parties have contractually agreed to a forum-selection clause, such as the North Carolina forum selection clause in the EULA, the Supreme Court's *Atlantic Marine* decision controls how federal courts must analyze motions to transfer. *See Atlantic Marine*, 571 U.S. at 62-68. The *Atlantic Marine* analysis truncates the factors courts otherwise would consider pursuant to 28 U.S.C. § 1404(a). The parties' forum choice expressed in a contract is "given controlling weight in all but the most exceptional cases." *Id.* at 63. Of note, "the plaintiff's choice of forum merits no weight" when the plaintiff has agreed to a forum-selection provision. *Id.*

A forum-selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1338 (9th Cir. 1997), as amended (Mar. 10, 1998) (citing *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). "Both the Supreme Court and [the Ninth Circuit] have construed this exception narrowly." *Lentini v. Kelly Servs., Inc.*, No. C17-3911 WHA, 2017 WL 4354910, at *1 (N.D. Cal. Oct. 2, 2017) (citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004)). There is a "strong federal policy in favor of enforcing forum-selection clauses" and a plaintiff's desire to litigate elsewhere does not outweigh it. *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1090 (9th Cir. 2018). This policy applies equally to online contracts using clickwrap consumer agreement formats. *See, e.g.*, *Falls v. Soulbound Studios, LLC*, No. 21 Civ. 961, 2021 WL 4295137, at *4 (C.D. Cal. July 6, 2021) (applying *Atlantic Marine* to clickwrap contract); *Sandler v. iStockphoto LP*, No. 15 Civ. 3659, 2016 WL 871626, at *4 (C.D. Cal. Feb. 5, 2016) (enforcing Canadian forum selection clause in clickwrap consumer agreement).

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER
Case No. 3:25-CV-2254

If a plaintiff opposes transfer where a forum-selection clause is present, that plaintiff must carry his burden solely by reference to "public interest factors." *See Atlantic Marine*, 571 U.S. at 51. These are only "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6.

## ARGUMENT

Other courts in this Circuit and elsewhere have enforced the EULA and compelled both adult and minor plaintiffs to arbitrate claims arising from *Fortnite* gameplay. This Court should do so, too. S.G. and/or his parent necessarily accepted the EULA as a precondition of S.G.'s playing *Fortnite* and accessing the *Fortnite* Item Shop. Moreover, before S.G. or his parent could make purchases from the Item Shop, the person entering payment card information had to confirm that (1) he or she was an adult and an authorized user of the method of payment; and (2) agreement to the EULA. S.G. thus is bound to arbitrate this dispute and not to pursue it as a class action.

If the Court agrees, as it should, that S.G. and/or his parent agreed to the EULA, all other disputes—including any over the validity, enforceability, or scope of the arbitration requirement and the validity of S.G.'s inapplicable and incomplete opt-out—must be decided by the arbitrator. The Court thus should not reach any such disputes itself. But if the Court disagrees and considers any of Plaintiff's claims not to be arbitrable, the Court should transfer the case to the Eastern District of North Carolina pursuant to the EULA's forum-selection clause and the Supreme Court's abbreviated analysis identified in *Atlantic Marine*.

## I.     S.G. Agreed to Arbitrate His Claims Against Epic Games.

As explained above in the factual background section, affirmative acceptance of the EULA by means of a clickwrap agreement is a precondition both to playing *Fortnite* and making purchases in the *Fortnite* Item Shop. Selection of the "Accept" button unambiguously manifests acceptance of the EULA. *See*, *e.g.*, *Berman*, 30 F.4th at 856-57; *Meyer*, 868 F.3d at 75; *Kamath v. Coinbase, Inc.*, No. 23 Civ. 3533, 2024 WL 950163, at *5 (N.D. Cal. Mar. 5, 2024) ("clicking Coinbase's 'accept terms' button" manifested assent); *In re Facebook Biometric Information Privacy Litig.*, 185 F. Supp. 3d 1155, 1165 (N.D. Cal. 2016) ("[O]ur Circuit has recognized that the closer digital

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER

Case No. 3:25-CV-2254

1    agreements are to the clickwrap end of the spectrum, the more often they have been upheld as valid

2    and enforceable").

3        Epic Games prominently displays the EULA's arbitration requirement. "To be conspicuous,

4    [the] notice 'must be displayed in a font size and format such that the court can fairly assume that

5    a reasonably prudent Internet user would have seen it.' The 'context of the transaction,' as well as

6    the 'traditional inquiry related to the visuals involved with the notice, such as font size, text

7    placement, and overall screen design,' inform whether a website provides reasonably conspicuous

8    notice of the terms of an agreement." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1155 (9th Cir.

9    2025) (quoting *Berman*, 30 F.4th at 856). Epic Games' notice meets that standard in terms of color,

10   size, placement, and format, as numerous courts have held in enforcing the EULA. *See, e.g.*, *S.T.G.*,

11   752 F. Supp. 3d at 1211; *Courtright v. Epic Games, Inc.*, No. 2:24-CV-04055-BCW, 2025 WL

12   558560, at *4 (enforcing the EULA and finding plaintiff's arguments to the contrary "unavailing");

13   *Orellana v. Roblox Corp.*, No. 6:24-CV-762-JSS-RMN, 2025 WL 694428, at *6 (M.D. Fla. Mar.

14   4, 2025) (minor plaintiffs entered "valid written agreements" with Epic Games to arbitrate);

15   *Heidbreder v. Epic Games, Inc.*, 438 F. Supp. 3d 591, 598 (E.D.N.C. 2020) (finding the *Fortnite*

16   EULA to be "neither procedurally nor substantively unconscionable" and enforcing the arbitration

17   provision against the minor plaintiff); *Johnson v. Activision Blizzard, Inc.*, No. 3:24CV00026 JM,

18   2025 WL 679033, at *4 (E.D. Ark. Mar. 3, 2025) (enforcing the *Fortnite* EULA). The Court should

19   find the same here.

## II.    The EULA Delegates All Threshold Questions of Arbitrability to the Arbitrator.

21       Because S.G. submitted his Notice of Dispute to Epic Games in October 2024 following

22   the procedure specified in the EULA, there can be no doubt he was aware of the EULA and its

23   arbitration requirement. Yet S.G.'s Complaint neither mentions the arbitration requirement nor

24   includes any argument as to why he believes he can litigate this case in court despite the EULA's

25   prohibition on doing so. S.G. has no valid basis to dispute contract formation, and any other

26   arguments must be resolved by the arbitrator pursuant to the delegation provision.

27       S.G.'s Complaint does not reference a potential "disaffirmance" of the EULA. Even if he

28   had, courts have construed minors' assertion of disaffirmance rights with respect to online terms

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER
Case No. 3:25-CV-2254

1    and conditions as defenses to enforceability, which an arbitrator must resolve. "[T]he issue of

2    disaffirmation does not relate to contract formation; rather, it goes to whether the [EULA] is

3    enforceable, an issue that the parties delegated to an arbitrator." *N.A. v. Nintendo of America Inc.*,

4    No. 23-cv-2424, 2023 WL 8587628, at *4 (N.D. Cal. Dec. 11, 2023); *see also K.F.C. v. Snap, Inc.*,

5    29 F.4th 835 (7th Cir. 2022) ("[T]he arbitrator, not a court, must decide whether K.F.C.'s youth is

6    a defense to the contract's enforcement."); *In re: StockX Cust. Data Sec. Breach Litig.*, 19 F.4th

7    873 (6th Cir. 2021) ("Plaintiffs' infancy defense is for an arbitrator to decide.").

8        Cases from across the country, including from within this Circuit, have upheld the

9    delegation provision of the *Fortnite* EULA and found that any disaffirmance defense raised to the

10   enforceability of the EULA's arbitration provision is validly delegated to an arbitrator. *See* S.T.G.,

11   752 F. Supp. 3d at 1211 ("Plaintiffs' claims as well as their disaffirmance defense fall within the

12   scope of the [*Fortnite*] EULA's arbitration agreement."); *Courtright*, 2025 WL 558560, at *5

13   ("Affirmative defenses [including disaffirmance] which would render an otherwise valid contract

14   unenforceable must be raised before the arbitrator when the contract includes a valid delegation

15   clause."); *Johnson*, 2025 WL 679033, at *3 ("[B]ecause of the [*Fortnite*] EULA's broad delegation

16   clause, the plaintiffs' contract enforceability challenges including [disaffirmance] go to an

17   arbitrator."); *Orellana*, 2025 WL 694428, at *10 (compelling plaintiffs' disaffirmance arguments

18   to the *Fortnite* EULA to arbitration); *Ayers v. Epic Games, Inc.*, No. 1:24-cv-64-AW-MJF, Dkt.

19   162, at 6 (N.D. Fla. Jan. 27, 2025) (delegating minority and duress defenses to the arbitrator); *Dunn*

20   *v. Activision Blizzard, Inc.*, No. 3:23-cv-00224-JM, Dkt. No. 163, at (E.D. Ark. Sept. 26, 2024)

21   (compelling minor plaintiff and their parents to arbitrate a disaffirmance defense); *Angelilli v.*

22   *Activision Blizzard, Inc.*, No. 23-CV-16566, 2025 WL 524276, at *15 (N.D. Ill. Feb. 18, 2025)

23   (finding that the *Fortnite* EULA "clear[ly] and unmistakabl[y] delegate[ed] authority to the

24   arbitrator" to decide disaffirmance defenses); *Antonetti v. Activision Blizzard, Inc.*, No. 1:24-CV-

25   2019-TWT, 2025 WL 359323, at *8 (N.D. Ga. Jan. 31, 2025) (compelling disaffirmance arguments

26   to arbitration). Disaffirmance is a question for the arbitrator.

27        In any event, any assertion of disaffirmance by S.G. would be futile. A minor cannot enjoy

28   the benefits of an agreement, assert claims arising from that enjoyment, and purport to disaffirm

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER
Case No. 3:25-CV-2254

1   the agreement's dispute resolution terms. *See C.M.D. v. Facebook, Inc.*, 621 F. App'x 488, 489

2   (9th Cir. 2015); *see also E.K.D. v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012) (same);

3   Williston & Lord, *A Treatise on the Law of Contracts* § 9:14 (4th ed. 1993 & Supp. 2011) (minors

4   "cannot take the benefit of the contract without the burden of the conditions."). S.G. therefore

5   cannot use disaffirmance to avoid arbitrating claims arising from prior gameplay. Notably, too,

6   S.G.'s ***continued*** use of his account to play *Fortnite* precludes him from invoking disaffirmance at

7   all. It is a prerequisite to valid disaffirmance that the minor cease obtaining benefits under the

8   agreement. *See, e.g.*, *C.M.D.*, 621 F. App'x at 489 ("By continuing to use facebook.com after

9   bringing their action, Plaintiffs manifested an intention not to disaffirm the contract."); *see also*

10  *Y.H. v. Blizzard Entertainment, Inc.*, No. 30-2022-01257732-CU-BT-CXC, 2025 WL 1331952

11  (holding that "while the filing of a lawsuit is sufficient disaffirmance, [Plaintiff's] continued use of

12  Blizzard accounts while this action has been pending, . . . manifests an intention not to disaffirm

13  the EULA") (internal citations omitted). Here, S.G. has continued to play *Fortnite*—logging

14  approximately 45 gameplay sessions, constituting about 10 hours of active play time—since

15  asserting this dispute on March 5, 2025. Shaw Decl. ¶¶ 33-37. Thus, S.G. cannot disaffirm.

16      If S.G. were to argue that his purported January 2025 opt-out from the arbitration

17  requirement (1) is effective, despite not containing accurate account information for him, and (2)

18  applies retroactively to the dispute he already had commenced by sending his Notice of Dispute to

19  Epic Games in October 2024, this also would be a dispute for the arbitrator to decide. As previously

20  discussed, S.G. created a *Fortnite* account in 2018, and a user of his account accepted the EULA

21  multiple times thereafter. The most recent acceptance, prior to S.G.'s initiation of this dispute in

22  October 2024, occurred in July 2024. *See* Shaw Decl. ¶ 28. S.G. cannot plausibly contend that he

23  was not bound by the EULA and its requirement to arbitrate as of October 2024, when he sent his

24  Notice of Dispute to Epic Games.

25      If S.G. contends that his belated and incomplete opt-out applies retroactively to a dispute

26  he commenced three months earlier pursuant to a different version of the EULA, that dispute too

27  must be resolved by an arbitrator. Another court within this District considered a nearly identical

28  dispute over the validity of an opt-out request and properly compelled the plaintiff to present that

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER
Case No. 3:25-CV-2254

argument in arbitration. This Court should do the same here. In *Collett v. Ancestry.com DNA LLC*, the plaintiffs had agreed to the defendant's online terms including an arbitration clause before commencing litigation. No. 19-CV-03743-RS, 2019 WL 13253477, at *3 (N.D. Cal. Dec. 19, 2019). After the dispute began, Ancestry.com updated the terms and conditions, and the plaintiffs opted out of the new version. *Id.* at *1. The Court found that because all versions of the terms contained an agreement to arbitrate and a broad delegation clause, the question of "whether plaintiffs successfully opted out of the contract [in effect when the dispute arose] is an issue of contract termination, not formation." *Id.* There, as here, the plaintiffs "rel[ied] on the valid formation of that contract to be able to take advantage of the opt-out provision in the first place." *Id.* Because "[i]ssues of termination, unlike issues of formation, fall outside the scope of the district court's jurisdiction under the FAA," the Court granted Ancestry's motion and compelled the matter to arbitration. *Id.*

The same result should follow here. There is no dispute that when S.G. initiated this dispute, he had agreed in July 2024 to be bound by the then-effective version of the EULA, including its arbitration requirement. Shaw Decl. ¶¶ 28-29. And here, as in *Collett*, the December 2024-amended *Fortnite* EULA from which S.G. seeks to opt out only applied prospectively. *Id.* ¶¶ 16, 23 & Ex. B, § 12.3.7. Thus, just as Epic Games could not seek to apply the amended EULA's provisions to S.G.'s already-pending dispute, S.G. cannot validly argue that his purported January 2025 opt-out from the new EULA (even if it had been complete and effective, which it was not) applies to his previously initiated dispute.

In any event, questions about the effectiveness of S.G.'s opt-out are for the arbitrator to decide. Supreme Court precedent is clear: "If a valid agreement exists and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *see also*, *e.g.*, *Mohamed v. Uber Techs.*, 848 F.3d 1201, 1209 (9th Cir. 2016). The same is true for delegated challenges to the validity, enforceability, or scope of an arbitration agreement. *See*, *e.g.*, *Cronin v. Advanced Fresh Concepts Franchise Corp.*, No. 20 Civ. 816, 2020 WL 6391216, at *2 (C.D. Cal. 2020). Even "a challenge to the validity of the contract as a whole, and not specifically to the

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER
Case No. 3:25-CV-2254

1    arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S. Ct.

2    1204, 1210 (2006). As a court in this Circuit recently held in *S.T.G.*, the *Fortnite* EULA has a clear

3    delegation provision. *S.T.G.*, 752 F. Supp. 3d at 1211 (compelling arbitration). Any doubts

4    concerning the scope of arbitrable issues must be resolved in favor of arbitration. *Moses H. Cone*

5    *Mem. Hosp.*, 460 U.S. at 24-25.

6    **III.    Any Non-Arbitrable Claims Must be Transferred to North Carolina.**

7         The Court should grant Epic Games' motion to compel arbitration and stay the case pending

8    the outcome of arbitration, putting a stop to S.G.'s end-run around the EULA. The Court need not

9    reach the EULA's forum-selection clause requiring non-arbitrable disputes to be heard only in the

10   state or federal courts in Wake County, North Carolina. *See* Shaw Decl. Ex. A § 11. That forum-

11   selection clause only applies to non-arbitrable claims—with the issue of arbitrability clearly and

12   enforceably delegated to the arbitrator, as discussed above in Section II—and all of S.G.'s claims

13   are arbitrable on their face. But if, notwithstanding the EULA's delegation provision, the Court

14   decides that the issue of arbitrability is for a court to determine, this Court should transfer the case

15   to the Eastern District of North Carolina and allow the determination to be made there.

16        In seeking to avoid application of a bargained-for forum-selection clause, Plaintiff bears a

17   "heavy burden," relying solely on "public-interest factors:" "the administrative difficulties flowing

18   from court congestion; the local interest in having localized controversies decided at home; [and]

19   the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic*

20   *Marine*, 571 U.S. at 51, 62 n.6, 66 n.8. Plaintiff cannot meet that burden. There are *no* public-

21   interest factors that would make transfer to the Eastern District of North Carolina unwarranted. No

22   administrative difficulties exist in that District. This is not a localized controversy; it is between a

23   Maryland-chartered company headquartered in North Carolina and a resident of Sacramento,

24   California (within the Eastern District of California, not this District). Familiarity with the law

25   weighs in favor of transfer because the EULA provides for disputes to be governed by North

26   Carolina law. Shaw Decl. Ex. A § 11.

27        In *Atlantic Marine*, the Supreme Court clarified that an enforceable forum-selection clause

28   modifies the traditional motion to transfer analysis. "[W]here a valid forum selection clause

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION OR TRANSFER

Case No. 3:25-CV-2254

preselects a different forum than the one selected by the plaintiff, the § 1404(a) analysis is altered in three ways: (1) the plaintiff's choice of forum 'merits no weight,' and the burden shifts to the plaintiff to show why the action should not be transferred to the preselected forum; (2) the court 'must deem the private-interest factors to weigh entirely in favor of the preselected forum'; and (3) a § 1404(a) transfer of venue 'will not carry with it the original venue's choice-of-law rules.'" *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 833–34 (N.D. Cal. 2018) (quoting *Atlantic Marine*, 571 U.S. at 64). The Supreme Court held that "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. . . In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Atlantic Marine*, 571 U.S. at 66.

Here, given the EULA's valid forum selection clause, the truncated § 1404(a) analysis applies. Plaintiff, not Epic Games, bears the burden to show why the case should not be transferred to the Eastern District of North Carolina, and he must carry that burden solely with respect to public-interest factors. "[T]he only convenience argument the Court is allowed to consider is that 'trial in the contractual forum will be so gravely difficult and inconvenient that Plaintiff will for all practical purposes be deprived of [their] day in court.'" *Jung v. Thor Motor Coach, Inc.*, No. 22 Civ. 1763, 2023 WL 1475109, at *5 (C.D. Cal. Jan. 20, 2023) (quoting *Bremen*, 407 U.S. at 18). Plaintiff cannot show this. Under the EULA's arbitration provision, if Plaintiff wishes the case to proceed where they live, they can elect that venue in arbitration, but not in litigation. *See* Shaw Decl. Ex. A, § 12.3.2 (stating that if in-person hearings are required, "the hearing will take place either in Wake County, North Carolina, or where You reside; you choose"). As noted above, Plaintiff's venue choice is not even his home District. If Plaintiff contests arbitration, and the case is transferred to North Carolina, Plaintiff cannot contend that this violates the public interest or that the transfer will deprive them of the opportunity to have their claims resolved. The interest of justice is served by holding parties to their bargain under the EULA and abiding by their valid and enforceable forum-selection clause.

## CONCLUSION

For the foregoing reasons, Epic Games respectfully requests that this Court compel Plaintiff

to arbitrate their claims as required by the *Fortnite* EULA in effect between Plaintiff and Epic Games when this dispute commenced, and stay the case while the arbitration proceeds. In the alternative, if this Court finds that arbitrability is for a court to decide the Court should transfer this case to the Eastern District of North Carolina pursuant to the EULA's forum-selection clause.

Respectfully submitted

**FAEGRE DRINKER BIDDLE & REATH LLP**


By:    */s/ Paul A. Rosenthal*
Paul A. Rosenthal
Alyssa S. Wolf

Attorneys for Defendant
EPIC GAMES, INC.