**FAEGRE DRINKER BIDDLE REATH LLP**
PAUL A. ROSENTHAL (Bar No. 338994)
paul.rosenthal@faegredrinker.com
600 Campus Drive
Florham Park, New Jersey 60606
Telephone: (973) 564-7030
Facsimile: (973) 360-9831

**FAEGRE DRINKER BIDDLE & REATH LLP**
ALYSSA S. WOLF (Bar No. 337162)
alyssa.wolf@faegredrinker.com
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Attorneys for Defendant
EPIC GAMES INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.G., by and through their guardian SIRREON GOODSON, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>EPIC GAMES, INC.<br><br>                    Defendant. | Case No.: 3:25-cv-2254<br><br>Hon. Rita F. Lin<br><br>**DEFENDANT EPIC GAMES, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO TRANSFER TO THE EASTERN DISTRICT OF NORTH CAROLINA PURSUANT TO 28 U.S.C. § 1404(A)**<br><br>Complaint Filed: March 5, 2025<br><br>Hearing Date: July 1, 2025<br>Time: 10:00 AM<br>Courtroom: 15<br>Judge: Hon. Rita F. Lin |

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S REPLY BRIEF
CASE NO. 3: 25-CV-2254

DMS_US.371672040.1

**TABLE OF CONTENTS**

Page

ARGUMENT ........................................................................................................................... 1

    I.    S.G. Accepted the EULA When He Made the Purchases At Issue in this Case. ................................................................................................................ 1

    II.    Plaintiff's Arguments Relate to the Scope of the Agreement, Not Formation. ..................................................................................................... 3

    III.    S.G. Must Arbitrate His Claims Against Epic Games. ........................................... 6

        A.    Mr. Goodson, as S.G.'s Apparent and Actual Agent, Bound S.G. to Arbitrate. ............................................................................................. 6

        B.    Equitable Estoppel Prevents S.G. from Avoiding Arbitration of Disputes Arising from His Activities in Mr. Goodson's Account. ............. 8

CONCLUSION ....................................................................................................................... 10

i

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S REPLY BRIEF
CASE NO. 3: 25-CV-2254

DMS_US.371672040.1

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ahlstrom v. DHI Mortgage Co.*,
21 F.4th 631 (9th Cir. 2021) .................................................................................................... 3

*Angelilli v. Activision Blizzard, Inc.*,
No. 23-CV-16566, 2025 WL 524276 (N.D. Ill. Feb. 18, 2025) ................................................ 5

*Atencio v. Bird Rides Inc.*,
No. 23 Civ. 4787, 2023 WL 8168955 (C.D. Cal. Nov. 3, 2023) .............................................. 9

*Babu v. Petersen*,
4 Cal. 2d 276 (1935) ................................................................................................................ 8

*Bangart v. Bonaventure of East Wenatchee LLC*,
No. 23-35528, 2024 WL 3858722 (9th Cir. Aug. 19, 2024) .................................................... 3

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) .................................................................................................. 3

*Buckner v. Tamarin*,
98 Cal. App. 4th 140 (2002) .................................................................................................... 8

*C.M.D. ex rel. De Young v. Facebook, Inc.*,
621 F. App'x 488 (9th Cir. 2015) ............................................................................................. 8

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) .................................................................................................. 3

*Caremark, LLC v. Choctaw Nation*,
104 F.4th 81 (9th Cir. 2024) .................................................................................................... 3

*Chan v. Charter Commc'ns Holding Co.*,
No. EDCV150886, 2015 WL 12655701 (C.D. Cal. Aug. 6, 2015) .......................................... 7

*Courtright v. Epic Games, Inc.*,
766 F. Supp. 3d 873 (W.D. Mo. 2025) .................................................................................... 5

*Cty. of Contra Costa v. Kaiser Found. Health Plan, Inc.*,
47 Cal. App. 4th 237 (1996) .................................................................................................... 8

*Cutway v. S.T.A.R. Programs, Inc.*,
904 N.Y.S.2d 806 (3d Dep't 2010) .......................................................................................... 7

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
885 F. Supp. 2d 894 (S.D. Ill. 2012) ....................................................................................... 9

*E.V.A. v. Epic Games*,
No. 24-6643 (9th Cir) .............................................................................................................. 4

*Evolution Online v. Koninklijke PTT Nederland N.V.*,
 145 F.3d 505 (2d Cir. 1998) (Opp. 10) .................................................................................. 5

*Ghazizadeh v. Coursera, Inc.*,
 737 F. Supp. 3d 911 (N.D. Cal. 2024) .................................................................................. 2

*Heidbreder v. Epic Games, Inc.*,
 438 F. Supp. 3d 591 (E.D.N.C. 2020) .................................................................................. 7

*Hofer v. Emley*,
 No. 19-CV-02205-JSC, 2019 WL 4575389 (N.D. Cal. Sept. 20, 2019) ............................ 8, 9

*Hojnowski v. Vans Skate Park*,
 901 A.2d 381 (N.J. 2006) ...................................................................................................... 7

*Mendieta v. Credit Mgmt.*,
 No. 23 Civ. 2512, 2023 WL 6786844 (C.D. Cal. Sept. 19, 2023) ........................................ 4

*Morrow v. Norwegian Cruise Line Ltd.*,
 262 F. Supp. 2d 474 (M.D. Pa. 2002) ................................................................................... 9

*Motise v. America Online, Inc.*,
 346 F. Supp. 2d 563 (S.D.N.Y. 2004) ................................................................................... 9

*Murphy v. DirecTV, Inc.*,
 724 F.3d 1218 (9th Cir. 2013) ............................................................................................... 6

*Naimoli v. Pro-Football, Inc.*,
 No. 23-2020, 2024 WL 4597029 (4th Cir. Oct. 29, 2024) ................................................... 6

*Nicosia v. Amazon.com, Inc.*,
 384 F. Supp. 3d 254 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020) ................... 6

*Paster v. Putney Student Travel, Inc.*,
 No. CV 99-2062, 1999 WL 1074120 (C.D. Cal. June 9, 1999) ........................................... 9

*Patrick v. Running Warehouse, LLC*,
 93 F.4th 468 (9th Cir. 2024) ................................................................................................. 2

*S.T.G. v. Epic Games, Inc.*,
 752 F. Supp. 3d 1200 (S.D. Cal. 2024) (Opp. 7-8) ........................................................... 4, 5

*Sanchez v. Nintendo of America*,
 2022 WL 4099154 (N.D. Cal. Sept. 7, 2022) ....................................................................... 4

*Taylor Morrison of Texas, Inc. v. Ha*,
 660 S.W.3d 529 (Tex. 2023) ................................................................................................. 7

iii

EPIC GAMES, INC.'S REPLY BRIEF
CASE NO. 3: 25-CV-2254

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DMS_US.371672040.1

*Tice v. Amazon.com, Inc.*,
    845 F. App'x 535 (9th Cir. 2021) ................................................................................... 9

*Wylie v. Island Hotel Co. Ltd.*,
    No. 15-24113, 2018 WL 3421374 (S.D. Fla. July 13, 2018) .................................................. 7

*Yeh v. Tesla, Inc.*,
    No. 23 Civ. 1704, 2023 WL 6795414 (N.D. Cal. Oct. 12, 2023) ......................................... 6, 7

**Other Authorities**

Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 9:14
    (4th ed. 1993 & Supp. 2011) ............................................................................................ 9

Transcript of Proceedings at 4, *Sanchez v. Nintendo of America*, No. 20 Civ. 6929
    (N.D. Cal. Mar. 13, 2021), Dkt. 46 .................................................................................... 4

iv

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S REPLY BRIEF
CASE NO. 3: 25-CV-2254

DMS_US.371672040.1

To avoid having his dispute compelled to arbitration, S.G. contends that because his father Sirreon Goodson, Sr. ("Mr. Goodson") created the Epic Games account in which S.G. played *Fortnite*, S.G. is not bound by the *Fortnite* End User License Agreement ("EULA"), including its terms for resolving disputes arising from gameplay and purchases. But although S.G. addressed the *initial* instance of EULA acceptance in the account he used, he ignored the many *subsequent* acceptances of the EULA in the same Epic Games account. S.G. pleads, and his father confirms, that S.G. made multiple purchases *himself* from the *Fortnite* Item Shop. Indeed, those purchases are the factual predicate for S.G.'s claims, and he could not have made them without personally accepting the EULA. S.G. thus agreed to the EULA, which requires him to arbitrate his dispute.

Even if the Court disregards S.G.'s implicit admission that he accepted the EULA himself and attributes all instances of EULA acceptance to Mr. Goodson, S.G. still must arbitrate his dispute. First, when Mr. Goodson accepted the EULA, he did so as S.G.'s agent, possessing both actual and apparent authority to bind S.G. At most, therefore S.G.'s dispute concerns the scope or enforceability of the EULA's arbitration agreement against him, and the EULA clearly and validly delegates scope and enforceability disputes to the arbitrator. Second, S.G. accepted the benefits of the EULA by playing *Fortnite* and purchasing items in the Item Shop. California's law of equitable estoppel therefore precludes S.G. from avoiding the EULA's dispute resolution terms.

In the alternative, if the Court does not find S.G.'s claims to be arbitrable, the Court should transfer the case to the Eastern District of North Carolina. S.G. did not dispute that the Supreme Court's *Atlantic Marine* decision requires enforcement of the EULA's venue clause. S.G. argued only that he is not bound to the EULA, but as shown above, S.G. is incorrect.

## ARGUMENT

**I.      S.G. Accepted the EULA When He Made the Purchases At Issue in this Case.**

S.G.'s claims arise from purchases S.G. alleges he made himself from the *Fortnite* Item Shop. (Compl. ¶¶ 5, 25; Goodson Decl. ¶ 4.) The Shaw Declaration (at ¶ 11) showed that, at each purchase, S.G. saw a screen stating "By clicking 'Place Order' below, I represent that I am over 18 and an authorized user of this payment method. I agree to the End User License Agreement."

1

EPIC GAMES, INC.'S REPLY BRIEF
CASE NO. 3: 25-CV-2254

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DMS_US.371672040.1

> You are purchasing a digital license for this product. For full terms, see purchase policy.
>
> By clicking "Place Order" below, I represent that I am over 18 and an authorized user of this payment method, I agree to the End User License Agreement.
>
> **PLACE ORDER**

Because S.G. necessarily completed this process with each purchase, he accepted the EULA. In cases involving nearly identical purchase screens, the Ninth Circuit has held that clicking the button provides a clear manifestation of assent. *See, e.g., Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (finding assent where website had "Place Order" button directly above statement requiring consumer to confirm age and agreement to hyperlinked terms); *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 926-30 (N.D. Cal. 2024) (where disclosure of terms was "immediately adjacent" to the action button and set off by distinguishing font, plaintiff's clicking of action button constituted unambiguous assent to contractual terms).[1]

S.G.'s conduct prior to submitting his Opposition brief also confirms that he accepted the EULA. In October 2024, S.G. served a pre-suit Notice of Dispute that stated his intention to disaffirm his EULA acceptance (Rosenthal Decl. Ex. A), thus conceding acceptance. Further, S.G. engaged separate counsel to send a letter purporting to opt himself out of the December 2024 EULA's arbitration requirement. *See id.* Ex. C. If S.G. had not accepted the EULA, he would not have needed to take either of these steps, both of which are inconsistent with his current argument.

If the Court agrees that S.G. accepted the EULA on even one occasion, that should be the end of the matter: the Court must compel arbitration pursuant to his agreement. S.G. does not otherwise contest the validity, enforceability, or scope of the EULA, and even if he had—or invoked disaffirmance rights, which Epic Games would contest—the EULA clearly and validly

---

[1] S.G.'s brief also ignored that each time Epic Games amended the EULA, the company required players to re-accept it before being able to resume gameplay. As shown in the Shaw Declaration (at ¶¶ 21, 28), this re-acceptance occurred in S.G.'s account multiple times, including twice in 2024. S.G.'s Opposition and Mr. Goodson's declaration are silent as to who accepted the EULA on each of these occasions.

Faegre Drinker Biddle & Reath LLP
Attorneys at Law
San Francisco

DMS_US.371672040.1

2

EPIC GAMES, INC.'S REPLY BRIEF
Case No. 3: 25-CV-2254

delegates those arguments to the arbitrator. *See* Shaw Decl. ¶ 14, Ex. A § 12.3.1 ("You and Epic agree to submit all Disputes between You and Epic to individual binding arbitration," including all disputes over "the validity, enforceability, or scope" of the arbitration agreement).

## II. Plaintiff's Arguments Relate to the Scope of the Agreement, Not Formation.

S.G.'s purchases from the *Fortnite* Item Shop bind him to the EULA personally, but even if the Court were to assume (which it should not) that the only relevant instances of assent to the EULA are Mr. Goodson's, S.G. still would have to arbitrate his claim. Although S.G. portrays his dispute as a matter of contract *formation*, Mr. Goodson concedes having formed the EULA when he created the account. S.G. thus is wrong to contend that "Epic has failed to carry its burden to prove the *existence* of the contract on which it relies." (Opp. 9.) At most, S.G. contests whether his claims fall within the *scope* of the EULA Mr. Goodson undisputedly accepted. Disputes over the arbitration agreement's scope or enforceability are for the arbitrator to decide. *See* Shaw Decl. Ex. A § 12.3.1; *Ahlstrom v. DHI Mortgage Co.*, 21 F.4th 631, 634-36 (9th Cir. 2021) (differentiating non-delegable formation disputes from delegable scope or enforceability disputes).

Where "the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022);  *see also Caremark, LLC v. Choctaw Nation*, 104 F.4th 81, 86 (9th Cir. 2024) (it is "well-settled law that arbitrators, not courts, must resolve challenges to the scope or enforceability of an arbitration provision when the parties have formed an agreement to arbitrate containing an enforceable delegation clause"); *Bangart v. Bonaventure of East Wenatchee LLC*, No. 23-35528, 2024 WL 3858722 (9th Cir. Aug. 19, 2024) (finding district court erred by addressing enforceability dispute that the agreement delegated to the arbitrator). Because S.G. challenges the EULA's applicability to him as a whole and raises no specific challenge to the delegation clause, the delegation clause controls, and S.G.'s arguments are for the arbitrator. *See Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009-10 (9th Cir. 2023) (challenge to delegation provision must be "specific").

Other courts have confirmed that whether a family member can be bound to an agreement

3

EPIC GAMES, INC.'S REPLY BRIEF
CASE NO. 3: 25-CV-2254

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DMS_US.371672040.1

formed by another family member is a question of contractual scope and not formation. For example, a judge in this District required arbitration where parents purchased and set up a video game console, accepted a user agreement during the setup process, and then gifted the console to their minor children. *See* Transcript of Proceedings at 4, *Sanchez v. Nintendo of America*, No. 20 Civ. 6929 (N.D. Cal. Mar. 13, 2021), Dkt. 46. After the console malfunctioned, the children sought to pursue claims against the manufacturer, arguing that they were not subject to the arbitration agreement accepted by their parents. *Id.* at 10. The court correctly held that an arbitrator should decide whether the asserted claim belonged to the children or the parents and whether the children were subject to the arbitration agreement. *See id.* at 23; *see also Sanchez,* 2022 WL 4099154, at *1 (N.D. Cal. Sept. 7, 2022) (noting "oral order" compelling arbitration and stating the arbitration's results). Even under Plaintiff's framing, S.G.'s dispute, like that in *Sanchez*, is a delegable dispute over the enforceability or scope of the agreement Mr. Goodson formed.

Similarly, in *Mendieta v. Credit Mgmt.,* the plaintiff's brother accepted a service agreement for household internet services that included an arbitration agreement with a broad delegation clause. No. 23 Civ. 2512, 2023 WL 6786844, at *1 (C.D. Cal. Sept. 19, 2023). There, as here, the parties did not dispute formation of that contract by the brother who accepted it. After the contracting brother passed away, the plaintiff continued to use and pay for the service. *See id.* The court found the plaintiff was bound by the contract's arbitration requirement and required him to direct any arguments over scope or enforceability to the arbitrator. *See id.* at *2-4.

The Opposition cites *S.T.G. v. Epic Games, Inc.*, 752 F. Supp. 3d 1200, 1212 (S.D. Cal. 2024) (Opp. 7-8), but that case is inapposite. The court in *S.T.G.* compelled six of seven minor plaintiffs to arbitrate their claims but held that Epic Games did not meet its burden with respect to the seventh. Epic Games has appealed from that decision; the appeal is fully briefed but not argued.[2] Even if not reversed, however, the district court's decision regarding that lone plaintiff turned on facts very different from S.G.'s here. In *S.T.G.*, there were no purchases in the account that the

---

[2] If the Court believes that *S.T.G.* is relevant to its decision in this case, Epic Games respectfully requests that the Court should, at a minimum, stay this case and defer any ruling on this Motion until the Ninth Circuit rules on *E.V.A. v. Epic Games*, No. 24-6643 (9th Cir).

4

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S REPLY BRIEF
CASE NO. 3: 25-CV-2254

DMS_US.371672040.1

1  minor used, and the minor's mother accepted the EULA on the one occasion of acceptance in the
2  account. Here, Mr. Goodson accepted the EULA at least once to set up the account, and there are
3  multiple subsequent acceptances of the EULA. Moreover, both S.G. and his father assert that S.G.
4  made purchases in the account that would have required him to accept the EULA himself. S.G. thus
5  occupies the same position as the six plaintiffs in *S.T.G.* whom the district court compelled to
6  arbitration, not the single plaintiff as to whom the Court believed it needed more information.

7  The other case cited by the Opposition also involves distinguishable facts. In *Evolution
8  Online v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 507 (2d Cir. 1998) (Opp. 10), the question
9  was whether two parties to a *draft* purchase agreement were bound by the *draft* forum selection
10 clause. On appeal, the court determined that because the contract had never been finalized,
11 additional evidence was needed to determine whether the forum selection clause was enforceable.
12 *Id.* at 509. This bears no resemblance to the present case, where there is no dispute that the EULA
13 was accepted and thus a contract was formed.[3]

14 S.G. also asks why Epic Games' Motion addressed disaffirmance when such cases, in S.G.'s
15 current telling, "have no bearing." (Opp. 8.) But S.G. commenced this matter with a Notice of
16 Dispute served "pursuant to [Epic Games'] dispute resolution procedures" —which he would not
17 have done if he was not subject to the EULA—asserting an intent to disaffirm. *See* Rosenthal Decl.,
18 Ex. A. Even now, S.G. purports to hedge his position by stating that (1) "S.G. does not raise a
19 disaffirmation defense (now)" (Opp. 6); and (2) "S.G. reserves his right to disaffirm or argue that
20 he previously disaffirmed any agreement with Epic in arbitration or any other future proceeding."
21 (Opp. 6, n. 17). As Epic Games showed in its Motion (at 9-11), any dispute over the effectiveness
22 of a minor's disaffirmance is an enforceability question that must be resolved by an arbitrator.

---

[3] The Opposition argues that Epic Games relies on cases that address only disaffirmance and not contract formation (Opp. 8). That is false. The cases Epic Games cited on pages 9-10 of its Motion addressed contract formation. *See, e.g.*, *Courtright v. Epic Games, Inc.*, 766 F. Supp. 3d 873, 888 (W.D. Mo. 2025) (finding plaintiffs' arguments that no valid arbitration agreement was formed where Epic identified the accounts and EULA acceptances "unavailing"); *Angelilli v. Activision Blizzard, Inc.*, No. 23-CV-16566, 2025 WL 524276, at *12, *17 (N.D. Ill. Feb. 18, 2025) (granting motion to compel arbitration on estoppel grounds with respect to minor plaintiff where parent "set up a [Sony] PSN account for [the minor's] use," accepting the EULA in the process).

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

EPIC GAMES, INC.'S REPLY BRIEF
CASE NO. 3: 25-CV-2254

DMS_US.371672040.1

### III. S.G. Must Arbitrate His Claims Against Epic Games.

If the Court disagrees with the arguments above and considers S.G.'s dispute to be a matter of contract formation that a judge must decide, the Court still should find that S.G. is bound by the EULA and must arbitrate his claims for at least two independent reasons. *First*, Mr. Goodson had the authority to bind S.G. to the EULA when he created the Epic Games account and provided S.G. access and permission to use it. *Second*, S.G.'s purposeful availment of the fruits of the EULA (his *Fortnite* gameplay in the account Mr. Goodson created and his purchases from the Item Shop) equitably estops S.G. from avoiding the EULA's rules and obligations, including its arbitration requirement for claims arising from his *Fortnite*-related purchases.

#### A. Mr. Goodson, as S.G.'s Apparent and Actual Agent, Bound S.G. to Arbitrate.

The Ninth Circuit has held that "[a] nonsignatory to an agreement to arbitrate may be required to arbitrate and may invoke arbitration against a party, if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013) (applying California law). Here, Mr. Goodson had both actual and apparent authority to bind S.G. to the EULA. He had **actual** authority because he sought to facilitate S.G.'s desire to play *Fortnite*, and the only way for him to do that was to create an account and accept the EULA. Mr. Goodson also had **apparent** authority because the EULA expressly called for parents to accept it on behalf of minors. For both reasons, S.G. must arbitrate his substantive claims. *See, e.g.*, *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 268-69 (E.D.N.Y. 2019) (applying Washington law, holding husband had actual authority to bind wife to arbitrate), *aff'd*, 815 F. App'x 612 (2d Cir. 2020); *cf. Naimoli v. Pro-Football, Inc.*, No. 23-2020, 2024 WL 4597029, at *5 (4th Cir. Oct. 29, 2024) (applying Maryland law, holding that a friend who purchased NFL tickets had apparent authority to bind friends who used the tickets to arbitrate). That Mr. Goodson provided S.G. access to an account previously created (rather than a new account in S.G.'s name) is of no moment. As required by the EULA, Mr. Goodson created an account and provided S.G. access to *Fortnite* by accepting the EULA as S.G.'s agent.

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

EPIC GAMES, INC.'S REPLY BRIEF
CASE NO. 3: 25-CV-2254

DMS_US.371672040.1

*Yeh v. Tesla, Inc.*, No. 23 Civ. 1704, 2023 WL 6795414 (N.D. Cal. Oct. 12, 2023) is informative on the binding effect of an arbitration agreement entered in California by a parent for the benefit of their child. In *Yeh,* a parent and his infant child asserted claims based on video footage allegedly captured by internal vehicle cameras without their consent. The parent expressly alleged he purchased a Tesla for the child's benefit. *See id.* The court compelled both parent and child to arbitrate. *See id.* at *8. The court found there to be "no bright-line rule . . . that a child's claims must always be arbitrated whenever their parent has entered into an arbitration agreement related to the subject matter of the claims" but determined that the child in that case must arbitrate because of the agreement's beneficiary nature. *Id.* at *8. Here, Mr. Goodson's acceptance of the EULA had a similarly beneficiary purpose—facilitating S.G.'s *Fortnite* play in the account—making this case analogous to *Yeh. See also Chan v. Charter Commc'ns Holding Co.*, No. EDCV150886, 2015 WL 12655701, at *5 (C.D. Cal. Aug. 6, 2015) ("[T]he spouse and children of a signatory to the Agreement . . . are bound by the arbitration clause."); *Heidbreder v. Epic Games, Inc.*, 438 F. Supp. 3d 591, 596 (E.D.N.C. 2020) (father was bound by minor child's agreement to the *Fortnite* EULA when father authorized the minor to play in an account the father created).

The principle that a parent can accept a recreational agreement on behalf of a child, and thereby bind the child to arbitrate disputes arising from the activity is well-established. "[T]he weight of authority . . . recognizes the enforceability of an arbitration provision when a parent executes an agreement that benefits the parent's minor child and the agreement contains an arbitration provision regarding the child's potential future tort claims." *Cutway v. S.T.A.R. Programs, Inc.*, 904 N.Y.S.2d 806, 812 (3d Dep't 2010) (collecting cases); *see also, e.g.*, *Taylor Morrison of Texas, Inc. v. Ha*, 660 S.W.3d 529, 534 (Tex. 2023) ("[A]s a general matter, parents may sign arbitration agreements on behalf of their children."). Moreover, "a pre-injury agreement to arbitrate does not require a minor to forego any substantive rights" but "specifies only the forum in which those rights are vindicated." *Hojnowski v. Vans Skate Park*, 901 A.2d 381, 392 (N.J. 2006). "Allowing a parent to bind a minor child to arbitrate . . . is not contrary to our duty as *parens patriae* to protect the best interests of the child." *Id.*; *cf. Wylie v. Island Hotel Co. Ltd.*, No. 15-24113, 2018

7

Faegre Drinker Biddle & Reath LLP
Attorneys at Law
San Francisco

DMS_US.371672040.1

EPIC GAMES, INC.'S REPLY BRIEF
Case No. 3: 25-CV-2254

WL 3421374, at *3-4 (S.D. Fla. July 13, 2018) ("Non-signatory family members are routinely bound to forum selection clauses and other provisions in recreational activities, especially when they 'accept[] benefits' under contracts containing those clauses") (collecting cases).

The cases cited by Plaintiff hold no different. In *Buckner v. Tamarin* (Opp. 7), the court noted that "a parent can bind a minor child." 98 Cal. App. 4th 140, 142 (2002) (confirming "an agent can bind a principal" and "spouses can bind each other" as the other exceptions where "someone can bind another person to a medical arbitration agreement without that other person's consent"). *Buckner* held that the *adult* daughter plaintiffs were not bound by their father's agreement to arbitrate disputes, specifically because they were *adults* and not minor children or spouses. *Id.* at 145. The *Buckner* decision thus confirms, rather than refutes, that Mr. Goodson had the authority to bind S.G. to the arbitration agreement in the EULA.

**B.    Equitable Estoppel Prevents S.G. from Avoiding Arbitration of Disputes Arising from His Activities in Mr. Goodson's Account.**

S.G. undisputedly received the benefits of the contract that Mr. Goodson created by playing *Fortnite* and obtaining access to the *Fortnite* Item Shop; thus, S.G. is equitably estopped from avoiding the contract's obligations, including its requirement to arbitrate disputes. A minor cannot "apply to his own use that part of the transaction which [brought him] a benefit"—here, the ability to play *Fortnite* and make purchases in the Item Shop—and then seek to repudiate the contract's dispute resolution requirements, "which may not be to his interest to fulfill." *C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488, 489 (9th Cir. 2015) (citing *Babu v. Petersen*, 4 Cal. 2d 276, 286 (1935)). Estoppel, therefore, is a separate, independent basis for the Court to conclude that S.G. must arbitrate his claims arising from his use of the *Fortnite* account Mr. Goodson created.

California law establishes that a nonsignatory can be bound to arbitrate a claim "because a benefit was conferred on the nonsignatory as a result of the contract, making the nonsignatory a third party beneficiary of the arbitration agreement." *Cty. of Contra Costa v. Kaiser Found. Health Plan, Inc.*, 47 Cal. App. 4th 237, 242 (1996). *Hofer v. Emley* is particularly instructive. There, one brother entered into a car rental agreement that contained an arbitration provision. No. 19-CV-02205-JSC, 2019 WL 4575389, at *6 (N.D. Cal. Sept. 20, 2019). When the brothers filed a lawsuit

8

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DMS_US.371672040.1

EPIC GAMES, INC.'S REPLY BRIEF
CASE NO. 3: 25-CV-2254

against the rental car company, the Court confirmed that both brothers (signatory-driver and his passenger) must arbitrate their claims. *Id.* at *7. The court confirmed that where an individual "knowingly received a direct benefit" due to another's agreement, the nonsignatory is estopped from avoiding that same agreement's requirement to arbitrate. *Id.* at *6; *see also, Atencio v. Bird Rides Inc.*, No. 23 Civ. 4787, 2023 WL 8168955, at *2 (C.D. Cal. Nov. 3, 2023) (compelling mother to arbitrate injury claims because she could not have used the rental scooter but for her son's creation of an account and acceptance of the agreement); *Tice v. Amazon.com, Inc.*, 845 F. App'x 535, 537 (9th Cir. 2021) (compelling arbitration of wife's claims based on equitable estoppel principles due to her husband's assent to Amazon's dispute resolution provision).

If the law were otherwise, this "would permit individuals to avoid" all contractual rules governing the use of online accounts "simply by having third parties create accounts and then using them as the Plaintiff did." *Motise v. America Online, Inc.*, 346 F. Supp. 2d 563, 566 (S.D.N.Y. 2004) (enforcing forum selection provision of online agreement when the adult stepson of the account creator used his stepfather's America Online account and asserted claims arising from its use). For that reason, minors cannot accept a contract's benefits but then seek to evade its requirements for resolving disputes. *See, e.g.*, *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012) (estoppel prevents California disaffirmance law from being "used inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit"); *Paster v. Putney Student Travel, Inc.*, No. CV 99-2062, 1999 WL 1074120, at *2 (C.D. Cal. June 9, 1999) (plaintiff who allegedly suffered personal injuries on a vacation she contracted for "cannot accept the benefits of a contract and then seek to void it in an attempt to escape the consequences of a [dispute resolution] clause that do not suit her"); *Morrow v. Norwegian Cruise Line Ltd.*, 262 F. Supp. 2d 474, 476 (M.D. Pa. 2002) (same; compelling arbitration of a minor plaintiff's dispute because "it would be inequitable to release [the minor] from the obligations and consequences attached to that benefit" of having taken the cruise from which her claims arose); *see also* Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 9:14 (4th ed. 1993 & Supp. 2011) ("If an infant enters into any contract subject to conditions or stipulations, the minor

9

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DMS_US.371672040.1

EPIC GAMES, INC.'S REPLY BRIEF
CASE NO. 3: 25-CV-2254

cannot take the benefit of the contract without the burden of the conditions.").

If the law permitted S.G. to play *Fortnite* in the account Mr. Goodson created without being bound by the EULA's rules, the implications would be far broader than just the forum for disputes. S.G. is not merely challenging the EULA's arbitration agreement; he contends his gameplay is not subject to the EULA *at all*. That would mean he is not bound by the EULA's anti-cheating provisions, prohibitions on harassing other players, etc. If any *Fortnite* player could gain a license to cheat in the game simply by having someone else assent to the EULA, these important provisions would be effectively nullified. No precedent from any jurisdiction supports such a result.

Further, as confirmed in the Shaw Declaration (at ¶¶ 28, 34-37), gameplay in the account Mr. Goodson created has continued after S.G. commenced this dispute. S.G.'s brief ignored this ongoing gameplay and did not dispute that S.G. himself is the one continuing to play. But the Opposition suggests that S.G. should be permitted to continue playing *Fortnite* without being subject to the EULA's obligations. *See* Opp. 7. S.G.'s brief cites no precedent that would endorse such an approach, and Epic Games is not aware of any valid legal basis upon which S.G. could obtain such a result.

## CONCLUSION

Thus, for the reasons stated herein and in the Motion, Epic Games respectfully requests that the Court compel S.G.'s claims to arbitration and stay the case or, in the alternative, transfer any non-arbitrable claims to the United States District Court for the Eastern District of North Carolina.

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

By:  /s/ Paul A. Rosenthal
     Paul A. Rosenthal
     Alyssa S. Wolf

Attorneys for Defendant Epic Games, Inc.

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

EPIC GAMES, INC.'S REPLY BRIEF
CASE NO. 3: 25-CV-2254

DMS_US.371672040.1