**FAEGRE DRINKER BIDDLE REATH LLP**
PAUL A. ROSENTHAL (Bar No. 338994)
*paul.rosenthal@faegredrinker.com*
JEFFREY S. JACOBSON (*pro hac vice*)
*jeffrey.jacobson@faegredrinker.com*
600 Campus Drive
Florham Park, New Jersey 60606
Telephone:    (973) 564-7030
Facsimile:    (973) 360-9831

**FAEGRE DRINKER BIDDLE & REATH LLP**
ALYSSA S. WOLF (Bar No. 337162)
*alyssa.wolf@faegredrinker.com*
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7519
Facsimile: (415) 591-7510

Attorneys for Defendant
EPIC GAMES INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.G., by and through their guardian SIRREON GOODSON, individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>    v.<br><br>EPIC GAMES, INC.<br><br>           Defendant. | Case No.: 3:25-cv-2254<br><br>Hon. Rita F. Lin<br><br>**DEFENDANT EPIC GAMES, INC.'S OPPOSITION TO PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUR-REPLY**<br><br>Complaint Filed: March 5, 2025<br><br>Hearing Date: None |

1    The Court should deny Plaintiff S.G.'s Administrative Motion for Leave to File a Sur-Reply. Defendant Epic Games, Inc. did not present any new evidence in its Reply (Dkt. 28) in support of its pending Motion to Compel Arbitration (Dkt. 23). The case S.G. cited in support of his motion for leave, where the defendant submitted a new declaration and multiple exhibits with its reply, therefore is inapposite. *See Alkutkar v. Bumble Inc.*, No. 4:22-cv-422-PJH, Dkt. 42 (N.D. Cal. June 22, 2022). It is actually S.G. who now wishes to introduce new evidence after the close of regular briefing, but his father Sirreon Goodson's ("Mr. Goodson's") new declaration (Dkt. 32-4) contradicts the earlier declaration (Dkt. 26-1) he provided in support of S.G.'s Opposition to the compulsion of arbitration. The Court, therefore, should not accept the sur-reply or this proposed new evidence. If the Court accepts these documents, however, Epic Games respectfully requests that the Court also consider the following information, which confirms why the Motion to Compel Arbitration should be granted.

The premise of S.G.'s Complaint is that S.G., not Mr. Goodson, "purchased numerous items from the *Fortnite* Item Shop from 2022 to 2024." Dkt. 1 ¶ 25. S.G.'s Complaint was silent about who created the account in which he played and how S.G. allegedly paid for the purchases he claims he made. S.G.'s counsel likely anticipated that Epic Games would move to compel S.G. to arbitrate his claims pursuant to the *Fortnite* End User License Agreement ("EULA"). In keeping with the EULA's dispute resolution requirements, S.G.'s counsel sent Epic Games a Notice of Dispute in which S.G. purported to "disaffirm any agreements made." Dkt. 23-2 Ex. A at 1. Epic Games also received a post-Complaint letter from a different lawyer claiming to represent S.G. The letter contended that S.G. personally accepted the updated EULA Epic Games published in December 2024 and that S.G. wished to exercise his 30-day right to opt out of the new EULA's revised arbitration requirement. *See id.* Ex. C. Both communications asserted that S.G. had accepted the EULA himself, which—if true—means S.G.'s dispute must be compelled to arbitration. As Epic Games demonstrated in its Motion and Reply, the arbitration agreement's delegation provision—Dkt. 23-1 Ex. A § 12.3.1—requires any disputes over the effectiveness of S.G.'s purported disaffirmance or post-hoc opt-out from the arbitration requirement be decided by an arbitrator.

In an attempt to avoid this result, S.G.'s Opposition to Epic Games' motion sought to walk back his counsel's prior admissions that S.G. accepted the EULA. Mr. Goodson provided a declaration in which he said he "set up" an Epic Games player account and "shared" it with S.G. Dkt. 26-1 ¶ 3. Mr. Goodson did not dispute that *he* accepted the EULA or that the process Epic Games used to record his assent is valid and binding. Accordingly, contract *formation* is not in dispute. The EULA states that the person accepting it agreed to be "legally and financially responsible for all actions using or accessing our software, including the actions of anyone you allow to access your account," and it expressly said parents should accept the agreement on behalf of their minor children. Dkt. 23-1 Ex. A at pp. 1-2. At most, therefore, even assuming the truth of Mr. Goodson's declaration that he set up the Epic Games account in which S.G. played, S.G.'s dispute concerns only the scope of his father's agreement, or its enforceability against him. These are matters the arbitrator must decide pursuant to the arbitration agreement's delegation clause.

In their papers, Mr. Goodson and S.G. are walking a tightrope in an attempt to keep S.G. out of arbitration while preserving S.G.'s ability to sue in his own name. S.G. likely lacks standing to sue for purchases paid for by Mr. Goodson. Thus, Mr. Goodson's original declaration asserted that "S.G. made at least some of the purchases at issue . . . using his own money." *Id.* ¶ 4. This should not, however, help S.G. avoid arbitration. In both Epic Games' opening brief (Dkt. 23 at 3) and Reply (Dkt. 28 at 2), Epic Games demonstrated that anyone "enter[ing] a method of payment to make a purchase from the *Fortnite* Item Shop" must confirm his or her acceptance of the EULA when doing so. Dkt. 23-1 ¶ 11.[1] Because the obvious implication of S.G.'s making purchases "using his own money" was that S.G. personally accepted the EULA while paying—which Epic Games pointed out in its Reply (Dkt. 28 at 1-2) —Mr. Goodson's new declaration contradicted his earlier

---

[1] The only reason a purchaser from the *Fortnite* Item Shop would *not* see the payment screen and its requirement to confirm acceptance of the EULA is if the purchaser was using a method of payment previously stored in the account to facilitate future purchases. Neither the Complaint nor Mr. Goodson's original declaration asserted that he stored a method of payment in the account he shared with S.G. For that reason, Epic Games' Reply assumed that the confirmation screen appeared at each purchase. *See* Dkt. 28 at 1. This was not a "new" argument, and as S.G.'s proposed sur-reply admits, Epic Games' Reply on this point referred to the same paragraph in the same supporting declaration (Dkt. 23-1 ¶ 11) submitted with its Motion.

1  attestation. He now claims that "[e]ach time a method of payment was entered to enable purchases
2  related to this [shared] account, I entered that method of payment myself." Dkt. 32-4 ¶ 3.[2] The new
3  declaration is at odds with both the Complaint's assertion that S.G. "purchased numerous items
4  from the *Fortnite* Item Shop" himself (Dkt. 1 ¶ 25) and Mr. Goodson's earlier declaration that S.G.
5  paid for "at least some" purchases "using his own money." Dkt. 26-1 ¶ 4. It also calls into question
6  whether S.G. is the proper plaintiff in this case. If Mr. Goodson set up the account and facilitated
7  all purchases, he should have sued in his own name rather than his son's.

8  Ultimately, however, the Court should compel S.G. to arbitrate the claims he has pleaded
9  "[e]ven if the Court disregards S.G.'s implicit admission that he accepted the EULA himself and
10 attributes all instances of EULA acceptance to Mr. Goodson." Dkt. 28 at 1. This is so because (1)
11 contract *formation* is not at issue; S.G. raises only an enforceability or scope dispute over whether
12 his father's acceptances of the EULA bind him as well; (2) each time Mr. Goodson accepted the
13 EULA in the shared account, he acted as his son's apparent and actual agent; and (3) equitable
14 estoppel precludes S.G. from enjoying the benefits of the *Fortnite* EULA, playing *Fortnite* in the
15 account and using the items acquired in the *Fortnite* Item Shop, while avoiding the contract's
16 dispute resolution terms. *See* Dkt. 23 at 10-11; Dkt. 28 at 3-10. S.G. did not contest any of these
17 arguments in his opposition brief and his proposed sur-reply does not address, them, either. S.G.
18 continues to dispute only the extent to which his father's agreement(s) to the EULA bind him, but
19 he still ignores that the EULA his father accepted delegates any disputes over its validity,
20 enforceability, or scope to the arbitrator. *See* Dkt. 23-1 ¶ 14 & Ex. A § 12.3.1.

---

[2] Mr. Goodson's two contradictory declarations do not account for all acceptances of the EULA in the account he shared with S.G. As the uncontested declaration Epic Games submitted with its opening brief demonstrated, a user of Mr. Goodson's/S.G.'s account accepted new versions of the EULA "on multiple occasions" before gameplay, "including on July 24, 2024." Dkt. 23-1 ¶ 28. S.G.'s briefs and Mr. Goodson's declaration have been silent as to which of them accepted the EULA on each occasion. This discrepancy should be resolved by an arbitrator, as will occur in *S.T.G. v. Epic Games, Inc.*, No. 2:24-cv-517-RSH. Docket entry 31 in that case, a Joint Status Update filed on June 30, 2025, states that the "Arbitrator deemed it necessary to order additional discovery [from plaintiffs only] into the circumstances of Samuel Garcia's, S.T.G.'s, S.J.G.'s, and S.B.G.'s creation of Epic Games player accounts and the facts and circumstances underlying their assertions that S.T.G., S.J.G., and S.B.G. possess the right to disaffirm the EULA."

S.G.'s proposed sur-reply argues that his case is analogous to *S.T.G. v. Epic Games, Inc.*, 752 F. Supp. 3d 1200 (S.D. Cal. 2024), *appeal pending sub nom. E.V.A. v. Epic Games, Inc.*, No. 24-6443 (9th Cir.). In *S.T.G.*, a district court compelled six of seven minor plaintiffs to arbitrate their claims arising from *Fortnite* gameplay but declined to compel arbitration as to the seventh because the court believed that, under Washington State estoppel or agency law, it might be relevant whether that minor *continued* to play in an account her mother created after the minor sued. *See id.* at 1212. Epic Games believes the district court erred and has appealed the decision.

S.G. asserts his situation is analogous to that of the seventh plaintiff in *S.T.G.* It is not. As shown in Epic Games' opening brief and supporting declaration, S.G. has played *Fortnite* "numerous" times after he filed his lawsuit. Dkt. 23-1 ¶ 34. Neither S.G. nor Mr. Goodson has disputed that S.G. engaged in post-suit gameplay. To the extent post-suit gameplay is relevant to Epic Games' estoppel arguments under California law—which, as Epic Games is arguing on appeal, it should not be—the disputed issue in *S.T.G.* about post-suit gameplay does not exist here.[3]

The closer analog to this case is *Sanchez v. Nintendo of America*, No. 20 Civ. 6929 (N.D. Cal. Mar. 13, 2021) (oral order reflected in transcript appearing at docket entry 46), *cited in* Dkt. 28 at 4. In *Sanchez*, parents set up a video game console, accepted an arbitration agreement during the setup process, and then gifted the console to their children. After the console malfunctioned, the children sought to pursue claims against the manufacturer, arguing that they were not subject to the arbitration agreement their parents accepted. *See id.* at 10. The *Sanchez* court correctly held that because the agreement delegated disputes over the arbitration requirement's validity, enforceability, and scope, an arbitrator must decide whether the asserted claim belonged to the children or the parents and whether the children were subject to the arbitration agreement. *See id.* at 23; *see also Sanchez*, 2022 WL 4099154, at *1 (N.D. Cal. Sept. 7, 2022) (noting "oral order"

---

[3] Nevertheless, as Epic Games stated in its Reply in this case, "[i]f the Court believes that *S.T.G.* is relevant to its decision in this case," which it should not, "the Court should, at a minimum, stay this case and defer any ruling on this Motion [to compel arbitration] until the Ninth Circuit rules on [the appeal]." Dkt. 28 at 4 n.2.

compelling arbitration and stating the arbitration's results). Here, as in *Sanchez*, an arbitrator should decide whether the claims asserted here are Mr. Goodson's or S.G.'s, and if they are S.G.'s, whether S.G. agreed to the EULA himself or is bound by his father's agreement to arbitrate.

Finally, S.G. also submitted with his motion for leave a new declaration from a law firm investigator. The investigator describes purchases he made from "the Nintendo Switch eShop," which is irrelevant to this case. Dkt. 32-5 ¶ 2. S.G.'s Complaint concerns his purchases from "the *Fortnite* Item Shop" (Dkt. 1 ¶ 16)—an online marketplace operated by Epic Games itself—not the different marketplace operated by Nintendo. The screen shots the investigator provided of his interactions with Nintendo's marketplace do not reflect what a visitor to the *Fortnite* Item Shop would have seen, as reflected in the declaration Epic Games submitted with its motion. The Court therefore should deny S.G.'s request for leave to file this irrelevant declaration.

## CONCLUSION

For the reasons stated herein and in Epic Games' Motion to Compel Arbitration and Reply in support of that motion, the Court should deny S.G.'s request for leave to file a sur-reply and, upon ruling on the Motion, should compel S.G.'s claims to arbitration and stay the case or, in the alternative, transfer any non-arbitrable claims to the United States District Court for the Eastern District of North Carolina.

Date: July 1, 2025

                              Respectfully submitted,

                              FAEGRE DRINKER BIDDLE & REATH LLP

By: */s/ Paul A. Rosenthal*
     Paul A. Rosenthal
     Jeffrey S. Jacobson
     Alyssa S. Wolf

     Attorneys for Defendant Epic Games, Inc.