UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S. G.,<br><br>        Plaintiff,<br><br>   v.<br><br>EPIC GAMES, INC.,<br><br>        Defendant. | Case No. 25-cv-02254-RFL<br><br>**NOTICE OF QUESTIONS FOR HEARING**<br><br>Re: Dkt. No. 23 |

    The Court requests that the parties be prepared to address the following questions at the hearing on Epic Games, Inc.'s Motion to Compel Arbitration, set for August 12, 2025 at 10:00 a.m., in Courtroom 15 at the San Francisco Courthouse.

    1.    Generally, the contractual right to compel arbitration "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (cleaned up). In *Kramer*, the Ninth Circuit declined to compel arbitration of a nonsignatory where "the arbitration agreements do not contain clear and unmistakable evidence" that the nonsignatory has agreed to arbitrate arbitrability. Here, as in *Kramer*, the terms of the arbitration clause in the EULA, including an agreement to arbitrate arbitrability, are limited to the signatory ("You") and Epic Games. (Dkt. No. 23-1 at 19, 20). If the Court cannot infer that S.G. himself signed the EULA, shouldn't the question of whether S.G. has agreed to arbitrate his claims with Epic Games despite being a nonsignatory be decided by the courts rather than the arbitrator?

    2.    If S.G.'s father accepted the EULA while setting up a payment method to allow

1

S.G. to buy items and pay his father back with his own money, that would seem sufficient to establish an agency relationship in which S.G.'s father signed the EULA for S.G.'s benefit on S.G.'s behalf. However, there is no evidence S.G.'s father entered the payment method through the Fortnite Item Shop, as opposed to entering a stored payment method on the Nintendo Switch eShop, which would not require signing the EULA. (Dkt. 32-5 ¶¶ 2, 5.) On what basis could the Court infer that S.G.'s father accepted the EULA on S.G.'s behalf as part of the act of entering the payment method?

3. The record supports the inference that S.G.'s father signed the EULA when he originally created a Fortnite account in 2018. However, there does not appear to be a sufficient basis to infer that S.G.'s father did so on S.G.'s behalf, as his declaration merely states that he set up an account with his own personal details and that he and S.G. "have shared this account over time." (Dkt. No. 26-1 ¶ 3.) S.G.'s purchases at issue were in 2022 to 2024. (Compl. ¶ 25.) S.G.'s father's account also accepted the EULA on several occasions between July 2024 and April 2025. (Dkt. No. 23-1 at ¶ 28.) Although the account remains active, there is no evidence S.G. was still playing on it at that time. On what basis can it be reasonably inferred that S.G.'s father signed the EULA on S.G.'s behalf and for S.G.'s benefit on those later occasions, or that S.G. did so?

4. Epic Games argues that S.G. should nonetheless be compelled to arbitrate his claims because he benefitted from S.G.'s father's signing of the EULA. "Direct benefits estoppel holds a nonsignatory to a clause in a contract if it knowingly exploits the agreement containing the clause." *Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930, 936 (N.D. Cal. 2020). Courts have found no knowing exploitation where the plaintiff "was not even aware there was an agreement in the first place." *See Hofer v. Emley*, No. 19-CV-02205-JSC, 2019 WL 4575389, at *7 (N.D. Cal. Sept. 20, 2019) (citation omitted); *see also Comer v. Micor, Inc.*,

>436 F.3d 1098, 1102 (9th Cir. 2006) (holding that the nonsignatory plaintiff, who was "simply a participant in trusts managed by others for his benefit" and "did not seek to enforce the terms of the [] agreements" was a "passive participant" who was not bound to arbitrate).  There does not appear to be evidence that S.G. knew about the EULA, which is not mentioned in the Complaint.  Why does that not preclude application of estoppel here?

At the hearing, each side will address each question in the sequence stated above, and then at the end, the parties will have additional time to present any additional argument that they wish the Court to hear.  The parties **shall not** file written responses to this Notice of Questions.

**IT IS SO ORDERED.**

Dated: August 4, 2025

RITA F. LIN
United States District Judge