**THE HODA LAW FIRM, PLLC**
Marshal Hoda
TX Bar No. 24110009 (admitted *pro hac vice*)
3120 Southwest Fwy
Ste 101 PMB 51811
Houston, TX 77098
Telephone: (832) 848-0036
marshal@thehodalawfirm.com

**FITZGERALD MONROE FLYNN PC**
Jack Fitzgerald
CA Bar No. 257370
2341 Jefferson Street, Suite 200
San Diego, California 92110
Telephone: (619) 215-1741
jfitzgerald@fmfpc.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| S.G., by and through their guardian SIRREON GOODSON, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>EPIC GAMES, INC.,<br><br>      Defendant. | Case No. 3:25-cv-2254<br><br>**PLAINTIFF'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO EPIC'S MOTION TO COMPEL ARBITRATION**<br><br>Judge:    Hon. Rita F. Lin |

**TABLE OF CONTENTS**

I. Response to Supplemental Shaw Declaration ............................................................. 1

II. Mr. Goodson Did Not Accept the EULA on S.G.'s Behalf ......................................... 2

III. Direct Benefits Estoppel .............................................................................................. 4

# TABLE OF AUTHORITIES

**Cases**

*Adzhikosyan v. AT&T Corp.*,
  2021 WL 5982604 (C.D. Cal. 2021) .................................................................................. 3

*B.F. v. Amazon.com Inc.*,
  858 Fed. App'x 218 (9th Cir. 2021) ................................................................................... 4

*Comer v. Micor, Inc.*,
  436 F.3d 1098 (9th Cir. 2006) ............................................................................................ 4

*Cutway v. S.T.A.R. Programs, Inc.*,
  904 N.Y.S. 2d 806 (Sup. Ct. 2010) .................................................................................... 2

*Garner v. Amazon.com, Inc.*,
  2025 WL 1911088 (W.D. Wash. July 7, 2025) ................................................................. 4

*In re Ring LLC Priv. Litig.*,
  2021 WL 2621197 (C.D. Cal. June 24, 2021) ................................................................... 3

*Kramer v. Toyota Motor Corp.*,
  795 F.3d 1122 (9th Cir. 2013) ............................................................................................ 2

*Mundi v. Union Security Life Ins. Co.*,
  555 F.3d 1042 (9th Cir. 2009) ............................................................................................ 2

*Murphy v. DirecTV, Inc.*,
  724 F.3d 1218 (9th Cir. 2013) ............................................................................................ 4

*Naimoli v. Pro-Football, Inc.*,
  2024 WL 4597029 (4th Cir. Oct. 29, 2024) ....................................................................... 3

*Nicosia v. Amazon.com, Inc.*,
  384 F. Supp. 3d 254 (E.D.N.Y. 2019) ............................................................................... 3

*Yeh v. Tesla, Inc.*,
  2023 WL 6795414 (N.D. Cal. Oct. 12, 2023) .................................................................... 5

*Zurich Am. Ins.*,
  417 F.3d 682 (7th Cir. 2005) .............................................................................................. 4

The Supplemental Declaration of Joshua D. Shaw that Epic submitted, Dkt. No. 43 ("Suppl. Shaw Decl."), provides no salient reason the Court should compel S.G. to arbitration. It does not show S.G. himself accepted the EULA, and the record remains devoid of any such allegation or evidence. And it does not support forcing S.G. into arbitration without evidence he agreed to it.

## I. RESPONSE TO SUPPLEMENTAL SHAW DECLARATION

Mr. Shaw avers every time S.G. exchanged consideration (U.S. dollars or "v-bucks" purchased with U.S. dollars) for in-game entitlements (such as outfits, weapons, dances, and "emotes"), he did so with Microsoft or Sony acting as a reseller, and Epic the supplier, "receiv[ing] [an] electronic signal" from Microsoft or Sony after an in-game purchase "to add the specific item to the purchaser's account." *See* Suppl. Shaw Decl. ¶¶ 7-16. At the hearing, Epic's counsel represented this happens pursuant to a license agreement, so some portion of purchasers' money goes to Epic upon every Fortnite item purchase. *See* Hrg. Tr. at 19 ("We get a share of the revenue"). And while it asserted this means S.G. has no claims against Epic, because "[i]f there were countdown timers" that misled him "they weren't [Epic's] countdown timers," *id.* at 15, it is implausible Epic has no hand in how its licensees operate their licensed stores. The Court should not accept such bald, pre-discovery attorney argument.[1]

What Mr. Shaw's declaration emphatically does *not* do is it does *not* demonstrate S.G. himself ever agreed to a EULA. And while Mr. Shaw says that his "prior declaration contained an error" in stating "that there was a Fortnite Item Shop transaction in the account used by Plaintiff in March 2025," Suppl. Shaw Decl. ¶ 15, he wholly fails to correct Epic's prior false claim, citing his prior declaration, that "at each purchase, S.G. saw a screen" requiring S.G. to accept the EULA. *See* Dkt. No. 27, Reply at 1.

Without evidence S.G. accepted the EULA himself, Epic relies on two arguments for

---

[1] The representation is contradicted by EULA provisions in which Epic retains responsibility for its software, including v-bucks and in-game items, and indemnifies third-party resellers for claims like those asserted by S.G. *See* Dkt. No. 23-1, Declaration of Joshua D. Shaw ("Shaw Decl.") Ex. A, EULA ¶ 18.

1  arbitration: (1) Mr. Goodson accepted the EULA on S.G.'s behalf; and (2) S.G. can be
2  compelled to arbitrate under the direct benefits estoppel doctrine. Both fail.

## II.  MR. GOODSON DID NOT ACCEPT THE EULA ON S.G.'S BEHALF

During the hearing, Epic argued evidence a Fortnite account associated with Plaintiff agreed to the EULA in 2023 demands the Court compel arbitration because, even if not "accepted by S.G. himself . . . it was accepted by Mr. Goodson . . . at a time when S.G. was certainly using the account," so that "it was accepted on [S.G.'s] behalf." *See* Hrg. Tr. at 6. Epic further claimed "the EULA is designed for a parent to accept it on behalf of a minor," *id.* at 8. But all it says is, "to enter into this license agreement, you must be an adult," an "if you are under the legal age of majority, your parent or guardian must consent to this agreement." Shaw Decl. Ex. A, EULA p.2 (capitalization disregarded).

This argument fails for three reasons. First, even with the benefit of the supplemental Shaw declaration, Epic has not provided any evidentiary basis to conclude that Mr. Goodson agreed to the arbitration provision *on S.G.'s behalf*. Here, the terms of the EULA are expressly limited to disputes between the *accountholder entering into the agreement* and Epic. Shaw Decl. Ex. A, EULA, pp. 19-20 (providing that "*You* and Epic agree to submit all Disputes between *You* and Epic to individual binding arbitration," and defining "Disputes" as any "claim . . . between *You* and Epic that relates to your use or attempted use of Epic's products and services") (emphasis added, capitalization in original). This case is, therefore, analogous to *Kramer v. Toyota Motor Corp.*, 795 F.3d 1122 (9th Cir. 2013). There, the Ninth Circuit refused to compel a non-signatory to arbitration over arbitrability because "the arbitration agreements d[id] not contain clear and unmistakable evidence" that the non-signatory had agreed to arbitrate, but instead indicated the agreement applied to disputes between the signatory and the movant. *Id.* at 1127-28 (citing *Mundi v. Union Security Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009)). This distinguishes cases cited by Epic in which the contested issue was whether minors could be held to arbitration agreements signed by their parents that *expressly extended* to cover claims by the minors themselves. *See Cutway v. S.T.A.R. Programs, Inc.*, 904 N.Y.S. 2d 806, 812 (Sup. Ct. 2010) (compelling arbitration where

agreement provided that "any claims" related to minor's participation in boot camp would be submitted to arbitration).

Second, Epic ignores that the existence of a "preexisting relationship between [a] a non-signatory and one of the parties to the arbitration agreement"—of which "parent-child relationships" are a species—"does not make compelling arbitration automatic." *Adzhikosyan v. AT&T Corp.*, 2021 WL 5982604, *6 (C.D. Cal. 2021). Far from it. Courts have *refused* to hold children to arbitration agreements signed by their parents where those contracts were not for "necessaries" like medical care or education. *Id.* (refusing to bind son to arbitration agreement entered into by his mother, even though son was "authorized user" of the account to which the arbitration agreement related); *In re Ring LLC Priv. Litig.*, 2021 WL 2621197, at *8 (C.D. Cal. June 24, 2021) (refusing to bind non-signatory children to their parents' contracts for consumer goods that contained arbitration provisions).

Third, Epic's attempt to frame its argument on this point as an "agency" issue is misguided. "Under agency theory, the legal consequences of an agent's actions may be attributed to a principal, not vice versa." *Adzhikosyan*, 2021 WL 5982604, at *6 (internal citation omitted). Thus, "while a non-signatory may invoke an arbitration agreement as an agent of a signatory party against *another signatory* party to the agreement, it does not follow that the reverse is true (i.e., that a non-signatory can be compelled to arbitrate absent an applicable exception)." *Id.* (emphasis in original). Here, Epic has not introduced any evidence that Mr. Goodson—who created the account in *his own name* and whose *personal* disputes with Epic are the explicit submit of the EULA—was somehow designated as S.G.'s agent for purposes of entering into the EULA on *his* behalf. This distinguishes Epic's cited cases, which all involved situations where there were express indications that the agreement at issue was being entered into by a agent (signatory) on behalf of a principal (non-signatory). *See Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 268-69 (E.D.N.Y. 2019) (compelling arbitration where there was abundant evidence that son was expressly authorized to sign up for account on his mother's behalf); *Naimoli v. Pro-Football, Inc.*, 2024 WL 4597029, at *5 (4th Cir. Oct. 29, 2024) (compelling arbitration where individuals entered football stadium using tickets on

the iPhone of a friend who had purchased tickets on their behalf).

### III. DIRECT BENEFITS ESTOPPEL

Epic next argues that S.G. is equitably estopped from refusing to arbitrate his claims. But "equitable estoppel of third parties in this context is narrowly confined." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). In the Ninth Circuit, "a non-signatory does not knowingly exploit the contract when they bring claims that 'do not arise out of the contract'—that is, when the non-signatory brings claims that 'sound in tort and allege personal injur[ies].'" *B.F. v. Amazon.com Inc.*, 858 Fed. App'x 218, 220 (9th Cir. 2021) (citation omitted). In *Comer v. Micor, Inc.*, for example, the Ninth Circuit held that a plaintiff asserting breach of fiduciary duty claims against an investment advisor was not bound by an arbitration clause in an agreement between the plan trustees and the investment advisor. 436 F.3d 1098, 1100 (9th Cir. 2006). The plaintiff had not sought to "enforce the terms of the management agreements, nor otherwise take advantage of them," and his claims were not based on the them. *Id.* at 1102. The court held such "passive" participation did not amount to the type of "knowing exploitation" that would invoke direct benefits estoppel. Other cases are in accord. *See Zurich Am. Ins.*, 417 F.3d 682, 688 (7th Cir. 2005) (rejecting doctrine where plaintiff "has not sought to enforce any rights it has under the [relevant] agreements," and "[e]ven assuming [plaintiff] has benefitted from the [relevant] agreements by paying lower insurance premiums . . . this benefit is too attenuated and indirect to force arbitration under an estoppel theory."); *Garner v. Amazon.com, Inc.*, 2025 WL 1911088, at *7 (W.D. Wash. July 7, 2025) (holding that "simply using a tool, toy, device, or appliance that was purchased by another under the terms of a contract does not imply an awareness or exploitation of the contract, does not suggest that a claim for injuries caused by the tool, toy, vehicle, or appliance arises out of the contract, and is not evidence of an agency relationship"). Here, just as in these cases, S.G.'s consumer-fraud claims sound in tort, and he is not invoking any provision in the EULA in furtherance of his claims.

The cases on which Epic relies are distinguishable. In *Yeh v. Tesla, Inc.*, the court explained "[t]here is no bright-line rule under California law . . . that a child's claims must

1 always be arbitrated whenever their parent has entered into an arbitration agreement related
2 to the subject matter of the claims. Rather, courts have reached different conclusions based
3 on the specific facts related to the equities of the situation." 2023 WL 6795414, at *7 (N.D.
4 Cal. Oct. 12, 2023). The court found the equities favored Tesla because "Yeh's purchase was,
5 at least in part, to benefit and provide care for his child," given his allegation he "purchased
6 the Model Y because he and his wife were 'expecting their first child' and 'believed it would
7 be a safe and reliable vehicle,'" that "'would be mindful of protecting his family's privacy.'" *Id.*,
8 at *8 (record citations omitted). Moreover, the minor's claims were "closely intertwined with
9 Yeh's [own] claims," and there were "no separate factual allegations as to the claims . . .
10 asserted jointly," which were "based, at least in part, on Yeh's understanding of Tesla's
11 privacy policy." *Id*. Since the "father agreed to arbitrate," the court found "it would be
12 inequitable to permit [the minor] to litigate" effectively identical claim. *See id*. Here, only S.G.
13 is pursuing claims, so they are not intertwined with any claims his father agreed to arbitrate.
14 Moreover, the Complaint alleges S.G.'s father created the relevant Fortnite account in 2018,
15 years before S.G. began using it, and does not allege he purchased Fortnite for S.G.'s benefit.

16        Finally, during the hearing, Epic claimed Fortnite "is a closed system. . . . The only way
17 you can get in to play Fortnite is by creating an account and accepting the EULA." Hrg. Tr.
18 at 29:5-8. But S.G. played Fortnite without doing either. From this wrong premise, Epic
19 argued a slippery slope: if the Court does not compel arbitration here and now, then Fortnite
20 players will "cheat or . . . harass other players," so that "the system that's played by millions
21 of people would break down." Hrg. Tr. at 29:14-19. But Fortnite is a service offered for sale—
22 accessible in some cases without creating an account or agreeing to Terms of Service—and
23 Epic has a right to refuse service. A player need not promise not to cheat and harass other
24 players for Epic to expel them (or in extreme cases make a criminal referral) if they cheat and
25 harass other players.

26
27
28

Dated: August 22, 2025                    Respectfully Submitted,


/s/   Marshal Hoda_____
**THE HODA LAW FIRM, PLLC**
Marshal Hoda
TX Bar No. 24110009 (admitted pro hac vice)
3120 Southwest Fwy
Ste 101 PMB 51811
Houston, TX 77098
Telephone: (832) 848-0036
marshal@thehodalawfirm.com

**FITZGERALD MONROE FLYNN PC**
Jack Fitzgerald
CA Bar No. 257370
2341 Jefferson Street, Suite 200
San Diego, California 92110
Telephone: (619) 215-1741
jfitzgerald@fmfpc.com

*Attorneys for Plaintiff*